ELIZA MERWIN, AS ADMINISTRATRIX OF SAMUEL MERWIN, DECEASED, RESPONDENT, *v.* THE MANHATTAN RAILWAY COMPANY, APPELLANT

*Negligent killing of a passenger upon a crowded platform of a car — contributory negligence in getting upon a crowded platform to ride.*

In this action, brought to recover for the killing of the plaintiff's intestate upon the cars of the defendant, it appeared that the plaintiff's intestate got on to the train of the defendant at the Forty-second street station; that the cars, including the platforms thereof, were very much crowded, so that it was almost impossible for the plaintiff's intestate and his companion to get on. As the train approached Seventy-sixth street, where the deceased intended to alight, passengers began to come out on the platform preparatory to getting off; the deceased was standing near the edge, and in consequence of the pressure made by the outcoming passengers stepped back, fell between the platforms and was instantly killed.

*Held*, that the defendant ought to have foreseen that such an accident might happen, and that the omission to provide suitable safeguards against its occurrence was actionable negligence.

That the fact that a very great number of passengers was carried daily by the defendant, and that no accident of the kind had happened before, was by no means conclusive on this question of negligence, inasmuch as the record failed to show that the trains which carried this large number of passengers were similarly crowded.

It was urged that a verdict should have been directed for defendant on the ground that the plaintiff was guilty of contributory negligence in getting on a car when it was perfectly obvious that he would have to stand on the platform.

*Held*, that even if it was obvious to the deceased that he would not be able at once to find a place inside of the car, yet the defendant, by taking him upon the train for the purpose of transporting him as a passenger upon the platform, was bound to exercise a high degree of care to make the platform safe and secure for his occupation, and he was entitled to assume that it would do so.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury for $5,000 at the New York Circuit, and from an order denying a motion for a new trial upon exceptions, because the verdict was for excessive damages, was contrary to evidence and was contrary to law.

*Edward S. Rapallo*, for the appellant.

*Thomas P. Wickes*, for the respondent.

BARTLETT, J. :

The plaintiff's intestate was killed by falling between the cars of a train on the Third Avenue Elevated Railroad, between six and seven o'clock, P. M., on September 18, 1884. He got on board the train, which was going up town, at the Forty-second street station. According to the testimony for the plaintiff the cars, including the platforms, were terribly crowded, so that it was almost impossible for the plaintiff's intestate and his companion to get on. There were four cars on the train and they stood on the rear platform of either the first or the second car. Upon leaving Sixty-seventh street there were from twelve to fifteen people on each platform, and the aisle of the car was filled with people standing. As the train approached Seventy-sixth street, where the deceased intended to alight, passengers began to come out on the platform preparatory to getting off. The deceased was standing near the edge, and in consequence of the pressure made by the outcoming passengers, stepped back, falling between the platforms. He was instantly killed. There is some evidence that just before the fall the cars " jogged together " and that the jolt thus produced had some influence in causing him to lose his foot-hold. There was nothing across the opening through which the deceased fell, nor in any way extending from the railing of one platform to the railing of the other. The cars were provided with small chains to hook across the passageway between the stanchions on the platform ; but they seem originally to have been designed for use in this manner only upon the front platform of the first car and the rear platform of the last car. Occasionally, however, these chains had been hooked from the stanchions of one platform across to the stanchions on the platform of the next car, so as to be on both sides of a passenger stepping from one platform to the other, and thus lessen, to some extent, the danger of falling into the open space between the cars.

Under the charge of the trial judge, and his rulings upon the various requests to charge, the jury could find that the defendant was negligent only on the ground that it omitted to provide adequate safeguards against the danger of falling from the platform, or, more particularly, that it was negligent in omitting to fasten the chains between the stanchions from car to car. The answer

of the defendant to this charge of negligence is that it had no reason whatever to anticipate the danger of such an accident as happened in this case. No casualty of the kind had ever before occurred. The chains were originally intended to be hooked across the ends of the train only. To hook them across any platform, except the front platform of the first and the rear platform of the last car, would be to prevent access from one car to another; and although they had sometimes, as a matter of convenience, been hooked from platform to platform, it was not for any purpose of protection but merely as a convenient method of putting the chains out of the way.

From what has been said it will be seen that the main question in the case, so far as the alleged negligence of the defendant is concerned, is whether the defendant ought to have foreseen that such an accident might happen. If it ought, the omission to provide suitable safeguards against its occurrence was actionable negligence. (*Loftus* v. *Union Ferry Co.*, 84 N. Y., 455; *Dougan* v. *Champlain Trans. Co.*, 56 id., 1.) In the latter case the sole proof of negligence was an omission to inclose a space between the railing and the deck of the defendant's boat, so as to preclude the possibility of slipping under it, and the court said: "Had there been any proof tending to show that any such danger would be apprehended by a reasonable, prudent person, the evidence should have been submitted to the jury." At the time of this accident the Elevated Railroad on Third avenue had been in operation a little over six years, and the proof showed that its trains were then carrying about 300,000 passengers a day. Up to that time no accident of a similar character to that by which the plaintiff's intestate lost his life had ever occurred, and hence the learned counsel for the appellant argues, that the Railroad Company had no reason to anticipate such a casualty or provide means to prevent it. But is this view correct? Is it not obvious to any railroad manager that passengers riding upon the car platforms in a train drawn by steam power are peculiarly exposed to various perils, and particularly to the danger of being thrown from the train? The liability to accident when riding on platforms was recognized by the legislature in the general railroad act (Laws 1850, chap. 140, § 46), in that provision which gives immunity to the company in case of injury to a passenger while riding on a platform in violation of the printed regulations forbidding him to do so. It

seems to me that the accident which befell the plaintiff's intestate was one which might well have been foreseen, and one indeed almost certain to occur if the defendant undertook to run its trains in the crowded condition shown by the evidence in this case. The fact that 300,000 passengers were carried daily by the company and that no accident of the kind had happened before is by no means conclusive on this question of negligence, inasmuch as the record fails to show that the trains which carried this large number of people were similarly crowded. In order to make such evidence of much weight as tending to show that the defendant had no reason to apprehend the casualty in question, it should appear that the conditions under which others had been carried safely for so many years were the same as those which existed when the plaintiff's intestate was injured.

But it is urged that a verdict should have been directed for the defendant, on the ground that the plaintiff was guilty of contributory negligence in getting on a crowded car when it was perfectly obvious that he would have to stand on the edge of the platform. As a matter of law, however, it was not contributory negligence for him to board the train under the circumstances disclosed by the record. ( *Werle* v. *Long Island R. R. Co.*, 98 N. Y., 650.) Although the platform is described as having been terribly crowded, it does not appear that the deceased perceived that he would have to stand on the edge of the platform, or that he did in fact stand on the edge of the platform throughout the journey. According to the witness Coogan, who was also a passenger on the platform, the deceased first stood at a point which, as shown in a diagram in the appeal book, must have been very near the middle of the platform. Even if it was obvious to the deceased that he would not be able at once to find a place inside the car, the defendant, by taking him upon the train *for the purpose of transporting him as a passenger upon the platform*, was bound to exercise a high degree of care to make the platform safe and secure for his occupation, and he was entitled to assume that it would do so. His knowledge of the construction of the platform, and the consequent insecurity could hardly have been as full or accurate as that of the defendant's officers and agents. Whether he was guilty of contributory negligence in anything he did thereon was a question for the jury.

The judgment and order appealed from should be affirmed, with costs.

Van Brunt, P. J. and Macomber, J., concurred.

Judgment and order affirmed, with costs.