## DAWSON v. TRUSTEES OF NEW YORK AND BROOKLYN BRIDGE.

(Supreme Court, Appellate Division, Second Department.   June 7, 1898.)

1. CARRIERS—INJURY TO PASSENGER—LIABILITIES.
   A common carrier engaged in the transportation of large numbers of persons from a station at which it controls the admission of passengers to its vehicles, and which allows them to crowd on board a train in such numbers and with such haste as to carry with them a passenger not intending to take that train, and to push him down between the bumpers, is responsible for an injury suffered by him in consequence.

2. SAME—QUESTION FOR JURY.
   At a trial of an action to recover damages for personal injuries suffered by a passenger who was forced between the bumpers of two of defendant's cars, without his fault, it appeared that he called out to the conductor not to start the train, but that no attention was paid to his request. It did not appear that the conductor knew that he was in a position of danger.   The defendant's counsel requested the court to charge that there was no evidence that the defendant was negligent in starting the train before the plaintiff could extricate himself from the peril, but the court, instead of complying, responded, "I will leave that to the jury to say." *Held* error.

Appeal from trial term, Kings county.

Action by Charles M. Dawson against the trustees of the New York and Brooklyn Bridge. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James C. Bergen, for appellants.

Samuel S. Whitehouse, for respondent.

WILLARD BARTLETT, J. There is sufficient evidence in the record before us to charge the defendants with negligence in permitting the platform of the car upon which the plaintiff took passage to be so overcrowded that the action of the crowd forced him into a position of danger from which he could not extricate himself quickly enough to escape injury. "The exposure of a passenger to a danger which the exercise of reasonable foresight would have anticipated, and due care avoided, is negligence on the part of a carrier." Lehr v. Railroad Co., 118 N. Y. 556, 23 N. E. 889. In the case cited the defendant railroad company undertook to carry more passengers than the inside of the car would hold, so that the car platforms, and even the steps, were crowded. It was not so here, for after the train started, and the plaintiff had got his foot out from between the bumpers, he was able to find a seat in the car. Nevertheless it clearly appears that the mass of persons desiring to board the train was allowed to crowd upon the car platform so rapidly, and with such force, that the plaintiff was unable to control his own movements, and was thrust hither and thither against his will, until one of his legs sank into the space between the third and fourth cars. Fortunately for himself, and fortunately for the defendants, so far as the amount of damages is concerned, the plaintiff succeeded in withdrawing the greater part of his leg before the starting of the train brought the bumpers together; so that he suffered only an injury to his foot, which has resulted in the loss of a portion of two toes. Common carriers, engaged in the transportation of large numbers of persons from stations at which such carriers control the admission of passengers to the vehicles of conveyance, are bound to exercise reasonable care so to regulate the movements and disposition of those whom they thus undertake to transport as to preserve the safety of all. This rule is deducible from the general principles governing the law of common carriers, and has been assumed in the decision of those negligence cases which have arisen from overcrowding. Graham v. Railway Co., 149 N. Y. 336, 43 N. E. 917; Tonkins v. Ferry Co., 47 Hun, 562, affirmed 113 N. Y. 653, 21 N. E. 414; Merwin v. Railway Co., 48 Hun, 608, 1 N. Y. Supp. 267, affirmed 113 N. Y. 659, 21 N. E. 415; McGearty v. Railway Co., 15 App. Div. 2, 43 N. Y. Supp. 1086. The defendants in the case at bar exercised complete control over the avenues of access to the train upon which the plaintiff took passage. It was within their power to limit the number of passengers who should be permitted to be upon the station platform at that particular time, and the number who should go or remain together upon the car platform, and it

was their duty to exercise that power so far as they could reasonably foresee that a failure to exercise it would result in injury to incoming passengers. As matter of fact, if the plaintiff's story be true, they allowed the crowd upon the station platform to become so great and uncontrolled that its movement compelled him involuntarily to board a train upon which he had not intended to come to Brooklyn. "I had no desire to take that train," he says, "but the crowd pushed me, and I was pushed between the two platforms. Before I could get out, I was pushed between the two platforms." This pushing, which the plaintiff was powerless to overcome, was done by the passengers who were getting on the car. As his leg went down between the third and fourth cars, the plaintiff called to the conductor or trainman not to start the train. Just at that time the train started, and the plaintiff's foot was crushed between the car bumpers. According to the plaintiff, the width of the opening between the cars was about 15 inches, but the testimony of Mr. Charles C. Martin, the superintendent of the bridge, reduced this space to 6 or 8 inches. Whichever distance be correct, the presence of such an opening would naturally be a source of peril to incoming passengers if others were permitted to crowd upon either car platform in such numbers and with such force as to push a person into it, in spite of all his efforts to avoid such a result. The jury might well conclude that a reasonable degree of foresight on the part of the defendants would have anticipated the danger to passengers which might thus arise from overcrowding, and that, if they had exercised due care to protect the plaintiff against that danger, he would not have been injured. The learned trial judge submitted the case fairly on this issue, and we should be quite satisfied with the view which the jury took of it were it not that their conclusion may have been influenced by his refusal to give an instruction which was requested in behalf of the defendants, and which we think ought to have been given. "I ask your honor," said defendants' counsel, "to charge that there is no evidence in the case tending to charge the defendant with negligence in starting the train while the plaintiff was in a position of danger, and before he could extricate himself from peril." The court did not comply with this request, but responded, "I will leave that for the jury to say;" to which ruling the counsel for the defendants duly excepted. We do not see how any negligence could properly be predicated of the action of the persons having charge of the train in starting it when they did. Although the plaintiff called out to the conductor not to start, it nowhere appears that he informed the conductor what was wrong, or notified him that he was in a perilous situation, or that the conductor saw the plaintiff, or knew of his danger, until after the accident had happened. It is true, the plaintiff testifies in one place that the conductor said he had no mode of signals by which to stop the train from starting, but there is nothing whatever in the record to show that this remark was made before the accident. In the absence of knowledge or warning or reason to believe that the plaintiff was in a position of peril, the conductor was under no obligation to delay the train at his instance; yet the jury must have supposed from the utterance of

the court in response to the request of defendants' counsel, which we have quoted, that they were at liberty to impute negligence to the defendants because the conductor did not then prevent the train from starting.    We cannot say that they were not influenced by this erroneous view in arriving at their verdict, and hence we are constrained to reverse the judgment, which otherwise there would be no difficulty in upholding.    In reference to the signals for stopping the train in an emergency, it appeared that there was a bell on the hood of the rear end of the fourth car, which could be rung, by means of a cord extending through the car, by the conductor or trainman standing on the front platform, near the place where the plaintiff was hurt, and that this bell could be heard without difficulty by the engineer in the engine which was pushing the train behind the fourth car.    The signal to start the train, however, was given by the ringing of an electric gong on the station platform.    The proof tends strongly to show that after the locomotive begins to move the train in response to this signal it is impossible to stop before bringing the cars together; so that, no matter how quickly the signal to stop may be given, a person with a foot situated as the plaintiff's was could not extricate it in time to avoid being injured.    This fact makes it all the more incumbent upon the defendants to take care that the overcrowding of platforms does not place passengers in a situation of danger from which the utmost celerity in signaling may not avail to rescue them.

Judgment and order reversed, and new trial granted; costs to abide the event.    All concur.