EDMUND C. VIEMEISTER, Respondent, v. THE BROOKLYN HEIGHTS RAILROAD COMPANY, Appellant.

TRIAL — ERROR IN CHARGE, WHEN CURED. Although in an action for negligence an instruction of the trial court duly excepted to, may be erroneous, where it is subsequently modified at plaintiff's request so as to conform to his theory, his acquiescence therein makes the charge as delivered the law of the case and he is bound by it.

*Viemeister* v. *Brooklyn Heights R. R. Co.*, 91 App. Div. 510, reversed.

(Argued May 2, 1905; decided June 16, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 19, 1904, which reversed a judgment in favor of defendant entered upon a verdict and an order denying a motion for a new trial and granted a new trial.

The complaint herein alleges "that theretofore and on or about the 26th day of September, 1900, plaintiff was a passenger on one of the defendant's cars on its said elevated line on Myrtle avenue, which car was crowded with passengers, by reason of which fact plaintiff was obliged to, and did, stand therein; that at or near the Vanderbilt avenue station of said line the defendant, neglecting and failing in its duty as a common carrier in the premises, negligently and carelessly allowed and forced other passengers to crowd into said car, whereby the said car became overcrowded and said train and car were then started up with a jerking motion, which caused the said passengers to sway and crowd against each other, and particularly against the plaintiff, forcing him against one of the seats in said car, and inflicting upon him severe and painful injuries." The answer is a general denial, but upon the trial it was not disputed that the plaintiff's knee

was injured while he was a passenger upon one of the defendant's cars.

On the 21st day of September, 1900, the plaintiff lived at Winfield, borough of Queens, city of New York. Toward evening of that day he boarded one of the defendant's Myrtle avenue elevated trains. He got off at the Vanderbilt avenue station on this line in order to transfer to another train for Ridgewood. His testimony and that of his witnesses tended to show that it was the "rush hour;" that the Vanderbilt avenue station was crowded; that plaintiff waited while one train went by, and when another came along the platform man or guard opened the middle door of one of the cars; that plaintiff was standing close to the edge of the platform, nearest the train; that a rush by a number of persons to get on at this door forced him into the car; that the car was crowded, but there was room for a few more; that plaintiff took a position standing near the end of one of the seats; that the guard on the outside kept pushing people into the car through that door after plaintiff was standing in that position, forcing his knee against the arm of the seat near which he was standing; that he felt the pain and called to the guard to desist, but the latter crowded on more passengers; that plaintiff felt the pain before the train started; that the train started with a jerk and this increased the pressure of the passengers against his knee.

At the close of the plaintiff's case counsel for the defendant moved to dismiss the complaint upon the ground that no negligence on the part of the defendant had been established, as the evidence did not show that there was any extraordinary movement of the car or more than was necessary for its operation. The court said: "I do not understand that they claim it was the jerk of the car that did it; they claim that it was the overcrowding." Plaintiff's counsel then said: "Overcrowding and forcing the passengers in." The motion was denied, but there was further colloquy between counsel and court, at the close of which plaintiff's counsel said: "We claim also not only the overcrowding, but continuing to force

passengers into an overcrowded car by the guard and then the unusual jerk due to the extra load by the unusual crowd."

The evidence introduced by the defendant tended to show that neither the car in question nor the Vanderbilt avenue station was crowded at this time, and that the train was not started with more than the ordinary jerk necessary to start the car.

In charging the jury the learned trial court explained the theory of the plaintiff's case as disclosed by the trial, saying in part, " that is his theory, that so many people were in there (the car) that it was not only inconvenient, but unsafe ; that they protested against anybody else being allowed to come on, but that in spite of that the guard outside who had power to keep people off, instead of keeping them off pressed them in, and pressing them in they pressed his leg against the seat and injured his knee," and stating that if the jury found this to be the cause of the accident they could find for the plaintiff. The court further charged that if the injury to the plaintiff was caused by the jerk of the car in starting the jury should find for the defendant, as there was no evidence tending to show that the train was started with anything more than the jerk necessary to move it. The court also charged that if the plaintiff was injured " by a rush of people who wanted to get on board at the same time on this crowded car, without the intervention or assistance of the guard, the defendant was not responsible, because that is another risk that a man takes in a crowded city in trying to get home the same time as everybody else wants to get home."

The material part of the charge concludes as follows: " Now that is the simple issue in this case. Was the plaintiff hurt by reason of the fact that against the protest, and when it became apparent that it was unsafe to have more people in there, the guard persisted in pushing more people in ? If those are the circumstances under which the accident happened, then you would have the right to hold the railroad company responsible, otherwise not."

At the conclusion of the charge the plaintiff's counsel took an exception to that portion " that states that if he was forced

on by other passengers in the desire to get to his home the company will not be liable," and with this exception was coupled the request "in view of that portion of the charge, that if though forced by other passengers on the car, if he boarded the car in safety and thereafter the guard pushed other people in and caused this accident, the company is liable," and the court so charged.

The jury rendered a verdict in favor of the defendant. The Appellate Division reversed the judgment entered thereon, stating in the order that the reversal was upon the law solely, the court having examined the facts and found no error therein. From that order the defendant appealed here.

*I. R. Oeland* and *George D. Yeomans* for appellant. The charge of the court was correct on the issues on which this action was submitted to the jury, and the Appellate Division committed error in reversing the case and granting plaintiff a new trial. (Code Civ. Pro. § 995; *Pollycranas* v. *Krausz*, 73 App. Div. 593.)

*Robert Stewart* for respondent. It was error prejudicial to the plaintiff to charge the jury that if the plaintiff was injured by the rush of people who wanted to get on board this crowded car, without the intervention of the guard, the defendant would not be liable. (*Gordon* v. *G. A. Ry. Co.*, 40 Barb. 546; *Graham* v. *M. Ry. Co.*, 149 N. Y. 336, 341; *Terry* v. *Jewett*, 17 Hun, 395; 78 N. Y. 338; *Dlaboda* v. *M. Ry. Co.*, 134 N. Y. 585; *Dawson* v. *Trustees, etc.*, 38 App. Div. 537; *McGearty* v. *M. E. R. R. Co.*, 15 App. Div. 2; *Sheridan* v. *B. & N. R. Co.*, 36 N. Y. 39; *Stierle* v. *Union Ry. Co.*, 156 N. Y. 70; *Palmer* v. *L. & H. Co.*, 120 N. Y. 170; *Cattano* v. *M. S. R. Co.*, 173 N. Y. 655.) If the injury was caused by the combined results of the pushing by the guard and forcing of passengers into an over-crowded car, together with the starting of the car at the same moment, the defendant is liable, and it was error to refuse to so charge when requested. (*Webster* v. *H. R. R. R. Co.*, 38 N. Y. 260; *Leeds* v. *N. Y. Tel. Co.*, 64 N. Y. 484; *Sawyer*

v. *City of Amsterdam*, 20 Abb. [N. C.] 227; *Braham* v.
*Man. Ry. Co.*, 149 N. Y. 336; *Lehr* v. *S. R. R. Co.*, 118
N. Y. 556.)

WERNER, J.   The foregoing statement of facts makes it
plain that the theory upon which this action was brought and
tried was, that the plaintiff had received his injuries through
the negligence of the defendant in forcing an increased crowd
of passengers upon a car already crowded, as a result of
which the plaintiff, then a passenger and standing in the car,
was pressed against a seat; and while thus situated, starting
the car with such a sudden jerk as to bring the plaintiff into
violent contact with the seat, and cause the injury complained
of.   The charge of the learned trial court was mainly con-
sistent with this theory and correct in its application of proper
legal principles.   It contained a statement to the effect that if
the jury should find that the plaintiff received his injuries as
the result of a rush of people " who wanted to get on board
at the same time on this crowded car, without the interven-
tion or assistance of the guard," the defendant could not be
held responsible " because that is another risk that a man
takes in a crowded city in trying to get home the same time
as everybody else wants to get home."   To this part of the
charge plaintiff's counsel excepted, saying, " I take an excep-
tion to that portion of your Honor's charge that states that if
he was forced on by the other passengers in the desire to get
to his home the company will not be liable," and then con-
tinuing with a request to charge as follows: " And I ask you
to charge, that if though forced by other passengers on the
car, if he boarded the car in safety, and thereafter the guard
pushed other people in and caused the accident the company
is liable."   To this request the court responded: " Certainly
I charge that."

For the purposes of this discussion we may assume that the
relation of passenger and carrier existed between the plaintiff
and the defendant quite as fully while the former stood upon
the platform as after he had boarded the car.   It was an ele-

vated structure, access to which was wholly within the control of the defendant. That assumption is purely academic, however, for the platform is not the place where the plaintiff received his injury. The allegations and proofs of the plaintiff fix the interior of the car as the place of the accident, and assign as its cause the excessive crowding of the car by the guard and the starting of the train with a sudden jerk. That is a theory of the case which the jury could not have misunderstood, because it was the only one supported by evidence and argument. But the court did charge that if the accident was caused by a voluntary rush of other persons who wanted to get on board the car, the defendant could not be held liable, and plaintiff's counsel, instead of contenting himself with an exception to that part of the charge, emphasized his adherence to the theory of the action set forth in the complaint by requesting the court to charge that, even though plaintiff was forced upon the car by other persons, yet, if he boarded it in safety, and the accident was caused by the guard's subsequent forced augmentation of the crowd, the defendant was liable. This request was granted. This was, in substance, a modification of the preceding portion of the charge. Counsel's acquiescence therein has made the charge as delivered the law of the case and he is bound by it. The charge as a whole was fairly responsive to the theory made and supported by plaintiff's counsel, and we should not be hypercritical in construing it simply because a jury has unexpectedly rendered a verdict in favor of a railroad corporation.

The order of the Appellate Division should be reversed and the judgment upon the verdict affirmed, with costs.

Bartlett, J. (dissenting). The record discloses an exception to the charge which justified the learned Appellate Division in reversing the judgment of the Trial Term in favor of the defendant.

In the main charge the trial judge instructed the jury as follows: " * * * ; or if you should find that he was injured by a rush of people who wanted to get on board at

the same time on this crowded car without the intervention or assistance of the guard, why the railroad company could not be held responsible, because that is another risk a man takes in a crowded city in trying to get home the same time as everybody else wants to get home."

At the close of the charge the plaintiff's counsel submitted his exception to the charge in a separate sentence, as follows: "I take an exception to that portion of your Honor's charge that states if he was forced on by other passengers in the desire to get to his home, the company will not be liable."

This exception to the charge was followed in a separate sentence by a request to charge as follows: "And I ask you to charge in view of that portion of the charge, that if though forced by other passengers on the car, if he boarded the car in safety and thereafter the guard pushed other people in and caused this accident, the company is liable." To this the trial judge replied: "Certainly I charge that."

I insist that the exception to the main charge was perfectly clear and raised the question whether or not it was legal error for the trial judge to instruct the jury that the railroad company could not be held responsible if the plaintiff was injured by a rush of people who wanted to get on board the train at the same time plaintiff did without the intervention or urging of the guard. In my opinion the railroad company was liable even if there had been no action of the guard, for the reason that it had allowed the station platform to become unduly crowded, which brought about the unfortunate situation resulting in plaintiff's serious injury. The jury should have been instructed that whether the accident to the plaintiff was caused by the crowd from behind forcing people into the car, or by the guard accomplishing the same result, in either event the company was liable.

Mr. Justice HIRSCHBERG, writing for the Appellate Division and referring to the manner in which the trial judge had charged the jury, said: "The remarks of the learned trial judge may perhaps be conceded to be sound when applied to a road which is operated upon the surface of a public high-

way, but have no application to a road built upon private property to which the company controls access and where a crowd cannot congregate in dangerous numbers unless the individuals composing it pay fares to the company in advance. As was said by Mr. Justice BARTLETT in the case of *Dawson* v. *New York & Brooklyn Bridge* (31 App. Div. 537, at page 539), 'The defendants in the case at bar exercised complete control over the avenues of access to the train upon which the plaintiff took passage,' and it was accordingly held that it being within their power to limit the number of passengers who should be permitted to go upon the station platform and into the cars, it was their duty to exercise that power in obedience to the obligation imposed by law upon common carriers so to regulate the movements and disposition of those whom they undertake to transport as to preserve the safety of all."

The fact that the defendant company had absolute control over the access to the train was ignored by the trial judge, but proved a potent factor in leading the Appellate Division to reverse the judgment for the defendant.

I vote for affirmance.

CULLEN, Ch. J., GRAY, O'BRIEN, HAIGHT and VANN, JJ., concur with WERNER, J.; BARTLETT, J., reads dissenting opinion.

Order reversed, etc. _____