BROWN et al. v. SULLIVAN.

(Supreme Court, Appellate Division, Fourth Department.   January 15, 1913.)

JUSTICES OF THE PEACE (§ 190\*)—APPEAL—ORDERING NEW TRIAL.

> Under Code Civ. Proc. § 3063, which provides that, where the judgment is against the weight of the evidence, the appellate court may reverse and order a new trial, the County Court, reversing a judgment of a justice's court on the ground that the verdict was against the weight of the evidence, should order a new trial before the same justice.
>
> [Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. § 734; Dec. Dig. § 190.\*]

Appeal from Cattaraugus County Court.

Action by George Murray Brown and another, as executors, etc., against Cornelius Sullivan.   From a judgment of the County Court, reversing a judgment for defendant, he appeals.   Modified, so as to provide for a reversal of the judgment of the justice's court and the granting of a new trial before the same justice, on the ground that the verdict was against the weight of the evidence.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

P. S. Collins, of Olean, for appellant.

F. J. Shaffer, of Olean, for respondent.

PER CURIAM.   While the evidence is such as might sustain a finding that there was an agreement so as to give the defendant a lien under the Lien Law (Consol. Laws 1909, c. 33) upon the cow for pasturing and boarding her, entitling him to the possession of the animal, it is evident, from the colloquy between the justice and the jury and the verdict rendered, that the jury charged the defendant with the value of the cow and allowed the same upon the counterclaim for the keeping, fixing the amount of the counterclaim at $5 more than the value of the cow, and rendering a verdict for the excess.   The County Court evidently held the allowance excessive, and properly reversed the judgment; but we think a new trial should have been ordered in the justice's court, as may be done under section 3063 of the Code, where the verdict is against the weight of the evidence.

Judgment of County Court modified, so as to provide for a reversal of the judgment of the justice's court without costs, and the granting of a new trial before the same justice, upon the ground that the verdict is against the weight of the evidence, with costs in this court to the appellant to abide the event.   New trial to be had on the 29th day of January, 1913, at 10 a. m.

RESCHKE v. SYRACUSE, L. S. & N. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   January 8, 1913.)

1. CARRIERS (§ 320\*)—PASSENGER'S ACTION FOR INJURIES—QUESTIONS FOR JURY.

> Where plaintiff testified that he was forced between a motor car and a trailer, and injured, by the pressure of the crowd, in attempting to

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

board such cars, and his account of the accident was borne out by two other witnesses, the jury was justified in adopting it as the true one, although a witness for defendant testified that plaintiff was injured while attempting to board the moving car.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

**2. CARRIERS (§ 287*)—DUTY TO PROTECT PASSENGERS FROM INJURY BY CROWD-ING.**

An electric surface railroad company, transporting passengers to and from a resort where large crowds frequently assembled and where it maintains a station, is bound to anticipate that crowding will occur in boarding its cars, and to use all reasonable care to protect passengers from injury from such crowding, even though its station grounds are sufficiently large to accommodate the crowd.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1154–1166; Dec. Dig. § 287.*]

**3. CARRIERS (§ 320*)—PASSENGER'S ACTION FOR INJURIES—QUESTIONS FOR JURY.**

The question whether a railroad company should have furnished more than six men to assist in controlling a crowd at a station where crowds were frequent should have been submitted to the jury, where such force was insufficient upon the occasion when plaintiff was injured by the pressure of the crowd.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

**4. CARRIERS (§ 320*)—PASSENGER'S ACTION FOR INJURIES—QUESTIONS FOR JURY.**

The question whether reasonable care required an electric railroad company to erect barriers at a station where crowds were frequent, to prevent passengers being forced against or between moving cars, was properly submitted to the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

**5. CARRIERS (§ 317*)—ACTIONS—ADMISSIBILITY OF EVIDENCE.**

In an action by a passenger, who was forced by the pressure of the crowd at a station between a motor car and a trailer, evidence of the precautions taken at other points and upon other roads to prevent such injuries was properly admitted, where its weight and effect and the purpose of its admission were clearly and directly stated by the trial judge.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1295–1306; Dec. Dig. § 317.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Herman Reschke against the Syracuse, Lake Shore & Northern Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

William Nottingham, of Syracuse, for appellant.
W. J. McClusky, of Syracuse, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAMBERT, J.  The appellant operates a street surface electric railroad between the cities of Syracuse and Oswego, and furnishing service to various summer and pleasure resorts along Onondaga Lake, including one known as Long Branch, at the north end of the lake. Long Branch is about 7 miles from Syracuse.  The railroad does not own the resort, but maintains a special service to it, and has a station located at the entrance to the grounds.  This station, which is merely a shelter or waiting room, is located upon a triangular piece of ground 220 feet long, with a base of 110 feet, lying between the main line of the defendant's road and the loop which furnishes service to this resort.  This piece of land is level, open, and unfenced, except that, extending on to the north, from the base of this triangular piece of land, the right of way of the appellant, along the loop, was fenced with pickets or posts, which prevented access thereto except at the station. The station stands about 26 feet from the rail, at its nearest point.

During the summer season large crowds of people attend this pleasure resort, and the facilities afforded for their transportation to and from the city are all furnished by the appellant.  On July 31, 1911, the Assumption Church of Syracuse gave a church picnic on these grounds.  Through arrangement between the church and the appellant, tickets affording transportation over appellant's line were sold by the church, and settlement thereafter made between the church and the railroad.  It is conceded that 7,732 tickets had been so sold upon this occasion.  Plaintiff had been in attendance upon this picnic, and, desiring to return to the city, came to this station at about 11 o'clock p. m. to board one of defendant's cars.  He says that there were then waiting at this station about 1,500 people, and that before the car arrived the crowd had increased to 2,000 or 2,500, all evidently awaiting transportation.  Plaintiff assumed a position about 20 or 25 feet south from the right of way posts and some 3 or 4 feet from the rail.  Almost immediately upon his arrival a motor car and a trailer passed, stopped for passengers, and departed.  Plaintiff did not board that car.  Five or six minutes after another train, similarly made up, came along.  It was moving very slowly; the motorman says so slowly that he could have stopped it within a foot.  As this train came opposite plaintiff, the crowd surged forward to secure seats.  In spite of his efforts, plaintiff was carried with the crowd and up against the motor car.  As that car continued to move along, by the pressure of the crowd, plaintiff was forced between the motor and the trailer, and the front truck of the trailer ran over one of his legs and onto the other. The car was stopped, and then, to permit the extrication of the plaintiff, was backed off from him, again passing over his leg.  These injuries necessitated the amputation of the one leg.

[1] Plaintiff's freedom from contributory negligence is well shown by the evidence.  He came to this station, the place provided by the appellant, to secure the convenience offered by the appellant to the public, and all of his actions appear to have been those of the average person, situated as he was.  It is true that one witness, called by the defense, testified as to the occurrence of the accident far differently from the claim of plaintiff.  According to that witness, plaintiff received his injury while attempting to board the moving car.  If this

version was to be adopted, then there could be no recovery; but plaintiff's version is borne out by two other witnesses, and the jury was well justified in adopting it as the true one.

[2] Plaintiff sought to establish the negligence of defendant, by reason of its lack of care in handling this crowd, while loading the cars, in such manner as to prevent such crowding and pushing. Such action by the crowd was reasonably to be expected. It appears that it was not unusual for the daily attendance at this resort to reach 25,000 to 30,000 persons, and some realization, by appellant, of the attendant dangers, is shown by the fact that it did furnish a few men to assist in preventing such occurrences. The witness Marvin, called by the defendant, seems to have had general charge on the evening in question, and to have performed similar duties upon other occasions. He testified that he had frequently seen crowds rush for the cars, and that on the day of the accident, between 5 p. m. and the time of the accident, he had at least 50 times gone in front of the crowd and pushed it back from the car. That crowds, under such circumstances, will rush forward, is also a matter of daily observation, and the helplessness of one caught in such a rush is well understood.

When the appellant assembled these people upon its property, for purposes of financial gain to itself, it assumed the responsibility of using all reasonable care to protect the individuals from injury from causes reasonably to be anticipated. Such a measure of duty upon the part of transportation companies and others handling large numbers of persons has been frequently recognized by the courts. Dawson v. New York Brooklyn Bridge, 31 App. Div. 537, 52 N. Y. Supp. 133, and cases therein cited. It knew, or should have known, that at that hour of the evening large numbers of these people would wish to enter its cars to return to the city, and that the desire to secure passage would result in forceful effort to secure such entrance. It is no answer to say that the station grounds were sufficiently large to accommodate this crowd. The danger arose in the loading of the cars, and appellant was bound to anticipate the expected movement of these people.

[3] Plaintiff suggested two means to prevent the result here experienced; i. e.: (1) More extensive policing; and (2) the erection of barriers, which would permit access to the car of only a limited number of people at one time. It was shown upon the trial that on this occasion there were six men furnished by appellant to assist in controlling this crowd. The court then withdrew from the jury the right to find defendant guilty of negligence in not furnishing more men for that purpose. I cannot justify such a position. The force was insufficient upon this occasion, at least, and it seems to me that the jury should have been permitted to say whether the defendant had discharged its full duty in that regard.

[4] The jury was permitted, however, to predicate negligence upon the failure to erect barriers, and it was found that reasonable care and prudence would suggest the erection of the same, in view of the apparent dangers. I think this conclusion is well supported by the proof. Everyday observation and the experiences of the appellant in the past clearly demonstrated such dangers to be present. The erec-

tion of barriers, turnstiles, and similar contrivances are so common, and such an effectual means for obviating such dangers, that it seems to me that prudence and foresight would have suggested their use in this instance.

[5] I see no error in the exception to the evidence of the precautions taken at other points and upon other roads. The weight and effect of such testimony and the purpose of its admission were very clearly and correctly stated by the trial justice.

The judgment and order should be affirmed, with costs. All concur, except McLENNAN, P. J., who dissents, upon the ground that the defendant was not shown guilty of negligence, especially in view of the charge of the court that sufficient police protection was furnished.