MARGARET E. MOREY, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Second Department, December 31, 1931.

*Jacob Aronson* [*K. O. Mott-Smith* and *Clive C. Handy* with him on the brief], for the appellant.

*John E. Mack*, for the respondent.

YOUNG, J. The action was brought to recover damages for personal injuries sustained by the plaintiff on July 1, 1925, just before noon, while she was alighting from a train operated by the defendant at the station at Poughkeepsie. The plaintiff claimed that the defendant was negligent in permitting this train to become dangerously overcrowded and that the rush of passengers to get off the train at Poughkeepsie caused her to be thrown from her

feet as she was in the act of alighting upon the station platform. Plaintiff testified that she was a school teacher in the city of New York, forty-three years old, and that her salary was $3,700 a year; that, on the day in question, she boarded defendant's train at One Hundred and Twenty-fifth street, New York city, having purchased a ticket for Poughkeepsie. The train consisted, from front to rear, of a club car, three sleepers, a parlor car, a diner, and five coaches. The train was scheduled to stop only at One Hundred and Twenty-fifth street and Harmon. When plaintiff went aboard the train, the brakeman told her that the only available seats were in the smoker, and so she went in there for a short time until the brakeman came and told her there was a seat in the car behind the smoker, and she thereupon went back into that car and found a seat. She testified that the car in which she was riding and the vestibule through which she walked to enter the day coach were filled with people standing up. The defendant disputes this and offered evidence to show that the cars were not overcrowded, but this question was plainly for the jury. In this connection it appeared that two conductors were unable to collect all the tickets before the train arrived at Poughkeepsie. One conductor took up the tickets in the sleepers and parlor car, while his assistant gathered tickets in the six coaches in the rear of the train. It was shown that, when the train stopped at Poughkeepsie, the conductor at first stood in the front of the coach in which plaintiff was riding, endeavoring to get the tickets from those he had not yet reached, and apparently some of those in this coach who still retained their tickets hurried to get out before their tickets were taken, hoping that they might redeem or use their tickets again. Plaintiff said that the crowd was so great in the car at this time that she could not raise her hands from her side; that she had placed the ticket in her purse so that it stuck out the top and could be reached without trouble. She testified that the conductor took her ticket from the top of her bag as she was going out, and that he was rushing about the platform trying to collect all the remaining tickets. She testified that, as she proceeded down the aisle of the car in the direction of the door, she saw the conductor at the door, but when she reached the door he was not there nor was there any other trainman in sight. She started down the steps, but the crowd crushed behind her and she was thrown into the space between the car and the platform, finally landing on the concrete station platform. The back of her coat showed the imprint of someone's foot.

Upon this appeal the appellant raises but two points: (1) That the finding of the jury that the defendant was negligent was against

the weight of evidence, contrary to the evidence and contrary to the law, and (2) that plaintiff was guilty of contributory negligence as a matter of law. The appellant's counsel states that there is no precedent in this State to uphold the judgment in this case. He then admits that there are numerous cases where recoveries have been justified where injuries were suffered because a railroad company negligently permitted the crowding or overcrowding of cars or station platforms, but appellant's counsel insists that those cases are predicated upon conditions not to be found in the case at bar, namely, rush-hour conditions in great cities, and particularly on street cars and elevated and subway trains in New York city, conditions which have long existed and the existence of which and the dangerous character of which were matters of common knowledge to the operators of the trains or cars. It is then argued that such conditions never have existed on through trains of steam railroads such as the one in question, nor was it shown that anything approximating such condition existed in the car in which plaintiff was riding.

One of the earlier cases cited by the appellant is *Merwin* v. *Manhattan R. Co.* (48 Hun, 608; affd., 113 N. Y. 659.) In that case the judge writing the opinion at the General Term, First Department, said: " At the time of this accident the elevated railroad on Third avenue had been in operation a little over six years, and the proof showed that its trains were then carrying about 300,000 passengers a day. Up to that time no accident of a similar character to that by which the plaintiff's intestate lost his life had ever occurred, and hence the learned counsel for the appellant argues that the railroad company had no reason to anticipate such a casualty or provide means to prevent it. But is this view correct? Is it not obvious to any railroad manager that passengers riding upon the car platforms in a train drawn by steam power are peculiarly exposed to various perils, and particularly to the danger of being thrown from the train? The liability to accident when riding on platforms was recognized by the Legislature in the General Railroad Act (Laws of 1850, chap. 140, § 46), in that provision which gives immunity to the company in case of injury to a passenger while riding on a platform in violation of the printed regulations forbidding him to do so. It seems to me that the accident which befell the plaintiff's intestate was one which might well have been foreseen, and one indeed almost certain to occur if the defendant undertook to run its trains in the crowded condition shown by the evidence in this case." At that time the elevated road was operated by steam.

Other cases are referred to where the courts have upheld verdicts

rendered in favor of plaintiffs injured by reason of crowding upon the elevated railroads and subways. Some of these cases are as follows: *McGearty* v. *Manhattan R. Co.* (15 App. Div. 2); *Viemeister* v. *Brooklyn Heights R. R. Co.* (91 id. 510); *Reschke* v. *Syracuse, Lake Shore & N. R. R. Co.* (155 id. 48); *Graham* v. *Manhattan R. Co.* (149 N. Y. 336); *Broder* v. *New York Consolidated R. R. Co.* (98 Misc. 256).

It will thus be seen that the appellant frankly concedes that, if this plaintiff had been injured in the manner claimed by her upon the subway or the elevated railroad in New York city she would have a cause of action, but it is asserted that the rule does not apply to steam railroads because there is no comparison to be made between crowded surface and subway cars in New York city and the day coaches of steam railroads; that there are no obvious dangers on steam railroads through overcrowding; that conditions are not the same, and that, even if the car in which plaintiff was riding was overcrowded as plaintiff testified, still it cannot be said that defendant had any reason to anticipate any such rush as occurred at Poughkeepsie when the train stopped or that plaintiff would thereby be thrown and injured. That is the substance of the defendant's argument upon this appeal.

I am inclined to the opinion that appellant's view in this respect is wrong. It seems to me that, under the circumstances shown by plaintiff as to the crowded car, it was quite probable that there would be a rush and a jam when the passengers started to alight at the station at Poughkeepsie. The conductors had knowledge that a large number would alight there, and it was obvious that there would be crowding and pushing at that time, and yet, according to plaintiff's story, no trainman was present to safeguard the situation. Plaintiff says that a conductor was at the door at first, but then ran about the platform trying to get the remaining tickets which had not been collected, and that there was no other official there. The defendant produced a trainman at the trial who said he was there on the platform and saw plaintiff fall. He did nothing to prevent her from falling, but said he did not suppose she was going to fall. Under the circumstances shown, I think it was a question for the jury to say whether the defendant should have anticipated some such occurrence, and whether, under the circumstances, it should not have done something to prevent the rush of passengers to get off. The defendant here, according to plaintiff's story, permitted these cars to be very much overcrowded, and I do not think it unreasonable to impose a liability for an accident of this kind when it is shown that nothing was done to prevent the passengers from rushing off the train; and it seems to

me that the defendant might well have anticipated, with such a crowd as plaintiff pictures, that some such accident might happen.

I think the claim that plaintiff was guilty of contributory negligence as a matter of law is without merit. The appellant seems to think that the plaintiff should have waited in her seat until the rush was over and that if she had done this she would have escaped injury. Probably this is true, but it is customary for passengers to get up from their seats even before the train stops, and I am sure that the plaintiff, in proceeding down the aisle as she did, with the others, was not guilty of negligence.

The judgment should be affirmed, with costs.

Present — LAZANSKY, P. J., YOUNG, KAPPER, SCUDDER and TOMPKINS, JJ.

Judgment unanimously affirmed, with costs.