NICOLINA ALLESSI, Plaintiff, *v.* NEW YORK RAPID TRANSIT COR-
PORATION, Defendant.

Municipal Court of New York, Borough of Brooklyn, Eighth District,
July 6, 1937.

*Morris J. Sandow*, for the plaintiff.

*George D. Yeomans* [*Frank Jablowski* of counsel], for the
defendant.

PETTE, J.  On May 21, 1935, the plaintiff was injured while
a passenger upon one of the defendant's trains.  At or about five-
thirty P. M. of that day she paid her fare at the Times Square Station
of the subway, and while standing near the center of the platform
awaiting the Sea Beach train, many people crowded and surged
forward as the train doors opened, pushing and throwing her
down inside of the car.  By reason thereof she fell backwards,
hitting her head on the floor, and also sustained injuries to her wrist.
The defendant's train dispatcher testified that this train generally
consisted of eight cars and remained at the station for loading
of passengers for a minute and a quarter to a minute and one-
half, and that there were fourteen station guards in the vicinity
of the platform.  It was further proved that there were four
entrances on this station platform, and that the people were grouped
around the twenty-two discs indicating the destination of the train.

The relationship of carrier and passenger was clearly established;
neither an actual entry into the cars, nor the proof of the actual
payment of fare, was essential to create that relationship; it was
enough that the plaintiff was on the station platform for the
purpose of taking the subway car.  (*Gordon* v. *Grand Street &
Newtown R. R. Co.*, 40 Barb. 546.)

The stopping of the train at Times Square Station was an
invitation to the plaintiff to take passage thereon.  (*Werle* v.
*Long Island R. R. Co.*, 98 N. Y. 651.)  The defendant was bound,
therefore, to furnish the plaintiff a safe place to ride.  Proof of

the omission to do so was evidence tending to show the defendant's negligence. (*Graham* v. *Manhattan R. R. Co.*, 149 N. Y. 336, 341.)

The exposure of a passenger to danger, which the exercise of a reasonable foresight would have anticipated and due care avoided, is negligence on the part of a carrier, and whether the overcrowding of the platform or the cars is negligence, is a question of fact. (*Lehr* v. *S. & H. P. R. R. Co.*, 118 N. Y. 556.) The evidence in this case was clearly sufficient to require the submission to the jury of the question of the defendant's negligence.

There can be no doubt that a jury may find negligence from such overcrowding as exposes passengers to danger. (*Sheridan* v. *Brooklyn & Newtown R. R. Co.*, 36 N. Y. 39; *Merwin* v. *Manhattan R. Co.*, 48 Hun, 608; affd., 113 N. Y. 659; *Lehr* v. *S. & H. P. R. R. Co.*, 118 id. 556; *Dawson* v. *N. Y. & Brooklyn Bridge*, 31 App. Div. 537; *Knaisch* v. *Joline*, 138 id. 854.)

The traveling public may be without remedy for the bestial conditions of passenger traffic obtaining in the city of New York during the so-called "rush hours," but when, superadded to the discomfort, physical injuries are sustained as a result of the maintenance of such conditions, the law affords a remedy. (*Broder* v. *New York Consolidated R. R. Co.*, 98 Misc. 256; *Graham* v. *Manhattan R. Co.*, 149 N. Y. 336.)

It was quite apparent from the facts herein that the disturbance was caused by the passengers compacting and surging forward to make early entrance to the arriving cars, and not from a general overloading of the platform. It was the customary forward striving for entrance to a train at a busy terminal with the expectable inconsiderate eagerness that such occasions develop. At such time guards on the platform should watch the conditions and by warning, and by physical opposition if necessary, restrain aggressive persons and make the entrance orderly so far as reasonable use of abilities permits. (*Bacon* v. *Hudson & Manhattan R. R. Co.*, 154 App. Div. 742.)

The sole question, as regards the defendant's negligence herein, was whether proper care and skill were employed to control the passengers. The jostling and crowding was sudden, and may have arisen so instantly that the harm was done before interference was practicable. But, knowing the tendency of crowds, it was defendant's duty to be attentive to the persons congregating and their actions, and the jury should judge of the occasion, its demands and the defendant's fidelity to its duty. (*Bacon* v. *Hudson & Manhattan R. R. Co.*, *supra.*)

The defendant herein is bound to use the skill and care such as would be exercised by a good and diligent business man in his

particular vocation and such degree of reasonable skill and care should be exercised in handling passengers on platforms and ways to incoming trains.

The duty does not demand pre-eminent care or the most intense anxiety, for that, continued, is beyond human capacity and endurance. That it does not require generally even the highest degree of practicable care, as in the actual transportation of passengers, is evident, as the passenger is not deprived in such case of his power of self-protection, which to a large degree is preserved to him. The degree of care may be constantly changing. Primarily the carrier's employees must be attentive, with vigilance increasing as the demand for it increases, and be ready to interpose when safety demands it.

The exposure of a passenger to a danger which the exercise of reasonable foresight would have anticipated and due care avoided, is negligence on the part of a carrier. (*Lehr* v. *S. & H. P. R. R. Co.*, 118 N. Y. 556.)

Common carriers, engaged in the transportation of large numbers of persons from stations at which such carriers control the admission of passengers to the vehicles of conveyance, are bound to exercise reasonable care, so to regulate the movements and disposition of those whom they thus undertake to transport as to preserve the safety of all. This rule is deducible from the general principles governing the law of common carriers, and has been assumed in the decision of those negligence cases which have arisen from overcrowding. (*Graham* v. *Manhattan Ry. Co.*, 149 N. Y. 336; *Tonkins* v. *New York Ferry Co.*, 47 Hun, 562; affd., 113 N. Y. 653; *Merwin* v. *Manhattan Ry. Co.*, 48 Hun, 608; affd., 113 N. Y. 659; *McGearty* v. *Manhattan Ry. Co.*, 15 App. Div. 2.)

The defendants in the case at bar exercised complete control over the avenues of access to the train upon which the plaintiff took passage. It was within their power to limit the number of passengers who should be permitted to be upon the station platform at that particular time, and the number who should go or remain together upon the car platform, and it was their duty to exercise that power so far as they could reasonably foresee that a failure to exercise it would result in injury to incoming passengers.

" If I had the wings of an angel," might be an appropriate wish of the much pitied straphanger, who like the scurrying ant, rushes pell-mell for a seat in the subway, and who tramples to avoid being trampled on.

In considering the degree of care required of the carrier in cases similar to the one at bar, consideration must be had of the following elements: (a) Width and length of the station platform; (b) location

of the entrances and exits; (c) number of exits and entrances; (d) normal traffic; (e) " rush hour " traffic; (f) presence and necessity for guard rails; (g) necessity and number of guards; (h) obstruction on platform by pillars, news-stands; (i) space between platform and train; (j) whether the station platform is straight or curved and respective distances of train to straight and curved platform; (k) visibility of station platform, entrances to subway cars; (l) warnings of danger by signs or guards, etc.

In the early leading case of *McGearty* v. *Manhattan Ry. Co.* (15 App. Div. 2) the action was instituted to recover damages for personal injuries sustained by plaintiff, occasioned by his being crowded from the platform by the passengers assembled at the defendant's elevated station, which caused the plaintiff to fall into the street below.

The negligence of the defendant was based, not upon any infirmity in the structure as a structure, but upon the character of its use at the particular time. The court indicated that as there was a constant accumulation of passengers upon the platform unless they were removed by the trains, the platform of the station would become overcrowded, and that such overcrowding might render the place unsafe. In that case the trains did not remove the passengers as fast as they accumulated and the defendant continued to admit passengers to the platform.

The court further held: "When the plaintiff entered upon the platform it was a safe place, and he had a right to assume that no part of it would be rendered unsafe by any act of the defendant. The obligation imposed upon the defendant was to take reasonable care in securing the safety of the passenger while upon its premises, and to see that he was exposed to no unnecessary danger while there. The defendant must be assumed to have known the capacity of its platform and when it had admitted passengers to the extent of such capacity. If, when having done this, the passengers were not removed by its trains, it became its duty to permit no more to enter. It had no more right to accumulate a crowd at the rear, which pressing forward, would precipitate those at the edge of the platform * * * than it would have the right to go upon the platform and push them off by physical force. * * * The absence of the rail, therefore, had direct relation to the number of persons which might be safely admitted to the platform before removal."

In *Reschke* v. *Syracuse, Lake Shore & N. R. Co.* (155 App. Div. 48; affd., 211 N. Y. 602) the plaintiff sought to establish the negligence of the defendant by reason of its lack of care in handling a

crowd of 1,500 to 2,000 people, while loading the cars in such manner as to prevent such crowding and pushing.

As the court indicated, such pushing and crowding was reasonably to be expected. It appeared that it was not unusual for the daily attendance at the resort to reach 25,000 to 30,000 persons, and some realization of the attendant dangers was shown by the fact that the railroad furnished men to assist in preventing such occurrences. It further observed that crowds will rush forward and the helplessness of one caught in such a rush was well understood.

The court stated the rule of responsibility as follows: " When the appellant [railroad] assembled these people upon its property for purposes of financial gain to itself, it assumed the responsibility of using all reasonable care to protect the individuals from causes reasonably to be anticipated. Such a measure of duty upon the part of transportation companies and others handling large numbers of persons has been frequently recognized by the courts. (*Dawson* v. *New York & Brooklyn Bridge*, 31 App. Div. 537, and cases therein cited.) It knew or should have known that at that hour of the evening, large numbers of people would wish to enter its cars to return to the city and that the desire to secure passage would result in forceful effort to secure such entrance. It is no answer to say that the station grounds were sufficiently large to accommodate this crowd. The danger arose in the loading of the cars and appellant was bound to anticipate the expected movement of these people."

In the above case it was shown that there were six men assisting in controlling the crowd. The court ruled that it was a question of fact for the jury to say whether the defendant had discharged its full duty.

The court also stated that past experiences in similar situations proved the value of (a) more extensive policing, (b) barriers which would permit access to the car of only a limited number of people at one time, (c) turnstiles and similar contrivances as effectual means for obviating dangers of overcrowded platforms.

The case of *Commerford* v. *Interborough Rapid Transit Co.* (199 App. Div. 852), cited by the defendant herein, is not in point, since the testimony in the record is sufficient to show that the plaintiff was pushed along; that the crowd was surging forward to the train, and that the crowd was so great as to prevent her free action. Plaintiff's testimony presented an issue of fact for the jury.

Defendant's motion to set aside the verdict of the jury is denied in all respects.