the purpose and intention of transferring such interest, if by any possibility they had it. Great stress is laid upon this paper as an expression of election on the part of the defendants to assume the lease. It is difficult, however, to put upon it any such interpretation. It was, moreover, a transaction between other parties, of which the plaintiff landlord had no information. The sheriff's custody of the goods upon the premises, herein called "possession," was not the possession of the defendants, of whom he was not the agent. If the landlord was unwilling to allow the sheriff to keep the chattels attached where he found them, proceedings should have been brought to dispossess him, for the sheriff did not become a tenant through the levy or the maintenance of custody, and was not bound to pay the landlord. The assignees had a reasonable time to determine whether an assumption of the lease would be for the benefit of the estate. No case is cited as holding that six days, of which one was Sunday, is an unreasonable time for such election, and the justice's determination upon the facts that it was reasonable is not to be disturbed.

Judgment affirmed, with costs.

FREEDMAN, P. J., concurs. LEVENTRITT, J., concurring in result.

---

(28 Misc. Rep. 516.)

### KIERNAN v. MANHATTAN RY. CO.

(Supreme Court, Appellate Term. July 26, 1899.)

CARRIERS—INJURY TO PASSENGERS—NEGLIGENCE.

An elevated railway company is not liable to a passenger who, in going from the train to the station room to get to the street, while in the vestibule between the platform and the station room, having passed through the swinging glass doors between the platform and vestibule, was struck by one of the swinging glass doors between the vestibule and station room being so quickly swung against her by an incoming passenger, who dashed against it "like a crazy man," that she did not have time to escape or see the danger; the use of swinging doors not being negligence, and the accident not being caused by the fact that, while the width of the vestibule from one set of doors to the other was only 4 feet 3 inches, each door was 3 feet wide, so that they might overlap when opened from both sides at the same time, and it not appearing that the other passenger was intoxicated, or boisterous, or violent, or in a condition requiring either his exclusion from the station or a watchfulness of his movements.

Appeal from city court of New York, general term.

Action by Lucy Kiernan against the Manhattan Railway Company. From a judgment of the general term (58 N. Y. Supp. 394), affirming a judgment of the trial term for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Charles A. Gardiner (Julien T. Davies and Joseph H. Adams, of counsel), for appellant.

Alfred & Charles Steckler (Levin L. Brown, of counsel), for respondent.

LEVENTRITT, J. This is an action to recover damages for personal injuries. On the night of December 31, 1895, at about 11 o'clock, the plaintiff disembarked from a train on defendant's suburban line at 133d street and Southern boulevard. The station at 133d street is between the two sets of tracks, and measures about 120 feet in length and 12 feet in width. Passengers coming from trains pass along the platform and through the station room to reach the stairs leading to the street. Access to the station room from the platform is had by two sets of swinging glass doors, separated by a vestibule. The width of the vestibule, and, therefore, the space between the two sets of doors, is 4 feet 3 inches. Each separate door is 3 feet wide. The doors of each set, when closed, join without overlapping; but, when the doors of each set on the same side are pushed back towards each other as far as possible from opposite directions, they overlap 1 foot 9 inches. Each door is 6 feet in height, with tiled wood panels from bottom rail to lock rail,—a space of 3 feet 6 inches. From lock rail to top rail the door is of glass. From the lock rail up, the glass is protected by four slats, placed about 2 inches apart. The view through the intervals between the slats, and through the glass about them, is unobstructed.

Describing the accident, the plaintiff states that, on leaving the cars, she entered the vestibule through the swinging door at her left, the one generally used by disembarking passengers. Then the opposite door was violently swung towards her, striking her in the face, or, adopting her own language:

"I was after getting through one of the doors, and was facing for the next swinging door, when the door swung, and struck me there [indicating right side of forehead]. * * * I was struck by the door in the space between the two doors."

She testifies that she was looking straight through the glass of the door as she entered, but that she "did not get time to look very much" before she was struck.

One of the plaintiff's witnesses, George S. Drake, saw the accident, and says:

"A crazy man, I guess. He rushed through, not regarding which doors he was passing through. * * * He struck this door, saw he hit some one, and then rushed to the left, and ran out, and caught a train."

This witness also testified that he had seen "lots of people hit, and hats knocked off and broke." There is no other testimony bearing on the question of previous mishaps resulting from the swinging doors. It appears that these doors had been in use 15 years, that about 4,000 persons passed through them daily, and that no complaints concerning them had been made.

We deem it unnecessary, for the purpose of deciding this appeal, to consider whether or not the double sets of swinging doors were negligently constructed, for the reason that, from the record as it is presented to us, it is apparent that their method of construction and relative positions did not cause, or contribute to, the plaintiff's accident. While it may be conceded that, from the overlapping of the doors, a condition might result which would bring the question of negligent construction within the province of the jury, the evi-

dence in the case at bar is convincing that the accident would have happened had there been merely a single, instead of a double, set of doors. The overlapping of the doors was not the proximate cause of the plaintiff's injuries. We are satisfied that, had there been but one set of doors, she would just as surely have been struck. Her own testimony is devoid of any statements that she was caught or pinned between the doors, or that their relative position or the width of the vestibule prevented her escape from or avoidance of the injury. She testifies that the view through the glass of the doors was unobstructed; that she was struck after passing the first set, and while facing the second; that she did not "get time to look very much." And it is clear, from her account of the occurrence, as, in fact, it is conceded by her counsel, that "the door swung so quickly upon her that she did not have time to escape or see the danger." On the proof, it is impossible to ascribe the accident to any other cause than to the rudeness of the stranger, who dashed against the door "like a crazy man," and violently swung it into the plaintiff's face. The plaintiff was struck by one door only, suddenly pushed against her by the violence of the incoming passenger. The unusual and unexpected act of this third person occasioned the injury, and to him must she look for redress.

It cannot be said that the use of ordinary swinging doors, as those in the case at bar, constitutes the maintenance of such a faulty or dangerous construction as could fasten liability on the defendant. Any form of door, whether swinging or not, might, through the independent act of a third person, injure one in close proximity to it. In Graeff v. Railroad Co., 161 Pa. St. 231, 28 Atl. 1107, where a passenger leaving the defendant's station was, while passing through a vestibule with swinging doors on each side, injured through the act of another passenger violently swinging one of the doors in her face, the court said:

"An impatient traveler, in a hurry to make a train, rushes ahead heedlessly, pushes the door open violently, and causes the door to strike the plaintiff with force, and injures the plaintiff. It was an act of rudeness, of which the plaintiff was the victim. That the stranger was responsible for his act there can be no doubt, but that the defendant shall be made to suffer in damages for such an act is intolerable and unjust to the last degree. It is subject to no duty to guard against such acts, and therefore is not negligent in that regard." Page 234, 161 Pa. St., and page 1107, 28 Atl.

There is no proof that the defendant had notice that the stranger would demean himself in a manner dangerous to his fellow passengers. There is no evidence that he was intoxicated, or boisterous, or violent, or in a condition requiring either his exclusion from the station or a watchfulness of his movements. He was lawfully a passenger, and one to whom the defendant was bound to sell a ticket. For his sudden negligent act the defendant is not liable. Putnam v. Railroad Co., 55 N. Y. 108; Thomson v. Railway Co., 75 Hun, 548, 27 N. Y. Supp. 608. The judgment must be reversed. .

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event.

FREEDMAN, P. J., concurs.     MacLEAN, J., takes no part.