BACON v. HUDSON & M. R. CO.

(Supreme Court, Appellate Division, Second Department. January 28, 1913.)

1. CARRIERS (§ 318*)—PASSENGERS—INJURIES ON PLATFORM—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In a subway passenger's action for injuries by being pushed from the platform onto the track by the congested traffic, evidence *held* not to sustain a finding that defendant's employés were negligent in not exercising due care to control and restrain the passengers on the platform.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

2. CARRIERS (§ 286*)—PASSENGERS—DUTY OF COMPANY—CONTROL OF PASSENGERS.

A subway company's employés should give attention to prevent passengers congregating on a subway platform from congesting or crowding, so as to endanger the safety of passengers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1142–1148, 1150–1152; Dec. Dig. § 286.*]

3. CARRIERS (§ 318*)—PASSENGERS—INJURIES ON PLATFORM—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

Evidence, in a subway passenger's action for injuries by being crowded off the platform onto the track, *held* not to show negligence in failing to prevent the entrance of more passengers, because of the crowded condition of the platform.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

4. CARRIERS (§ 280*)—PASSENGERS—INJURIES ON PLATFORM—CARE REQUIRED.

In submitting the question whether a subway company was negligent in permitting a congestion of passengers on its station platform, causing one to be pushed onto the track, the instruction should take as the standard of care a man sufficiently skilled in the business to safely conduct it, and willing to direct his efforts to that end; the highest degree of practicable care not being required in protecting passengers on the platform, such as is necessary in transportation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1103, 1105, 1106, 1109, 1117; Dec. Dig. § 280.*]

Appeal from Trial Term, Rockland County.

Action by George E. Bacon against the Hudson & Manhattan Railroad Company. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Bertrand L. Pettigrew, of New York City, for appellant.
Bruce R. Duncan, of Brooklyn, for respondent.

THOMAS, J. The plaintiff, standing about 6 inches from the edge of the platform in defendant's subway in the Hudson Terminal Building in the city of New York, was jostled by the pushing of passengers as they crowded to take an incoming train, so that he fell to the track and was injured by the train. The court submitted the question whether the defendant was negligent in permitting so many passen-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes .

gers upon the platform. It is quite apparent that the disturbance was caused by the passengers compacting and surging forward to make early entrance to the arriving cars, and not from a general overloading of the platform. It ·was the customary forward striving for entrance to a train at a busy terminal, with the expectable inconsiderate eagerness that such occasions develop. At such a time guards on the platform should watch the conditions, and by warning, and by physical opposition, if necessary, restrain aggressive persons, and make the entrance orderly, so far as reasonable use of abilities permits. The unrestrained impetuosity of some passengers, and the unordered entrance of the crowd to the trains, noticed commonly at principal stations, obtained when plaintiff was hurt.

[1] The court should have submitted to the jury the question whether the defendant made provision for moderating undue crowding, and whether there was any negligent failure on the part of the platform men to discharge that duty. The plaintiff contends that the collection of persons was unusually large, from the fact that the incoming train was late. The defendant proves that the train was on time, and that the number of passengers was not unusual for the hour when the accident happened. Therefore the sole question, as regards the defendant's negligence, is whether proper care and skill were employed to control the passengers. The jostling and crowding was sudden, and may have arisen so instantly that the harm was done before interference was practicable.

[2] But, knowing the tendency of crowds, it was defendant's duty to be attentive to the persons congregating and their actions, and the jury should judge of the occasion, its demands, and the defendant's fidelity to its duty.

[3] I consider that the question of defendant's negligence cannot rest on failure to bar the entrance of more passengers. The platform was 416 feet long and 21½ feet wide, with tracks on either side for the entrance of trains, and four stairways leading to it. Plaintiff came down the north stairway, and walked some 20 feet north, and stopped at his customary place, some 6 inches from the edge of the platform, so as to be able to enter the first car and get a seat. The dispatcher's booth was some 15 feet north of his position. The plaintiff testifies to a crowd about him, so close to him that, as he says, he "felt people against me on every side"; and he adds:

"As I saw the train approaching, and felt the bodies of men against me, there was a sudden pushing and jostling. * * * I could feel the swaying crowd; then I went off the platform very suddenly."

As to the extent of his observation of the conditions, he says:

"I was only interested in that portion of the platform where I took the train. I looked around about 15 or 20 feet either way. I first noticed the crowding that I speak of just before the train appeared at the south end of the station. * * * I did not change my position in any way when I felt the crowding. I only tried to withstand the pressure. I had noticed a number of people. I had looked around, and saw people standing 4 or 5 feet deep behind me. After the first crowding that I felt, the crowding continued. It was a continuous jostling; people moving. I don't know as it was any different from the ordinary crowds that you get into in the station. I did not feel any ap-

prehension at that time; no. * * *, At the last moment it was a sudden pressure. Up to that time I had only felt the usual pressure that I have spoken of."

· This and further evidence to the same effect indicates the usual increasing pressure of the people as the train appeared, until its thrust drove him from the platform. But the limited area of the platform occupied is apparent. The witness Regelman was also in the space between the same stairway and the dispatcher's booth, and although he makes a sweeping statement of the entire platform crowded from edge to edge and end to end, yet it appears that he could not look the "whole distance of the platform, one end to the other," and that the space filled with people that he actually saw was between the dispatcher's booth and the staircase, which in his estimate was less than the length of the courtroom, and he adds:

"That space was filled with people—that is, as far as I could see. I think it was about three-quarters the length of this room. I don't know about the people beyond the stairs; I did not look south of the staircase at all."

Such is the plaintiff's evidence to prove a platform over 400 feet long so overcrowded as to demand, in the exercise of proper care, that the defendant should accumulate the incoming passengers above the stairways, with the probable dangers of descent of an unusual gathering at such point. In any case, the evidence does not show a platform in its whole capacity unduly filled, but does permit the inference that those seeking admittance to the train pressed forward to take it with such unrestrained eagerness that the plaintiff was unable to hold himself from falling. He had placed himself, as he usually did, 6 inches between himself and the loss of his foothold, and in view of his age of 74 years his contributory negligence is a matter of serious consideration.

For the purposes of the new trial, some attention may be given to the charge that the defendant was bound to use "a high degree of care for the safety of its passengers to have provided against the happening of such an accident." The adherence to the charge indicates that the court used the term considerately, and as the standard by which the defendant's fulfillment of its duty was to be measured. Whether a condition that may happen in reasonable expectation demands slight care, what is called rather vaguely ordinary care, or something higher than that, or the highest care, depends upon the nature of it. The desirable end is to instruct the jury so that they will know, so far as laymen can be taught on the occasion, what care and skill the defendant should have used.

[4] Hence an efficient practice is in some form of words to ask the jury to call to mind a man sufficiently equipped in knowledge for the carrying on of the business, skilled to make use of his knowledge for the reasonably safe conduct of the undertaking, and disposed to use his abilities for the safety of those to whom he owes some duty of protection, and let them find whether the defendant acted as such a man would under the circumstances. A defendant in such a case as the present is presumed to be a good and diligent business man in its particular vocation, and is bound to the skill and care of such per-

son in receiving and handling passengers on platforms and ways to incoming trains. The duty does not demand pre-eminent care or intensest anxiety; for that, continued, is beyond human capacity and endurance. That it does not require generally even the highest degree of practicable care, as in the actual transportation of passengers, is evident, as the passenger is not deprived in such case of his power of self-protection, which to a large degree is preserved to him. What degree of care the occasion or the exigency requires is for the jury to decide; but it is the care that a good, prudent business man would exercise at the time and place. The platform may be so sparsely filled as to require slight diligence; it may quickly be so packed by an agitating crowd as to require great diligence. So the degree of care may be constantly changing. But primarily the carrier's servants must be attentive, with vigilance increasing as the demand for it increases, and be ready to interpose when safety demands it. This is mere expansion of the primary obligation to be competent for the business in skill and prudence and to exercise both when and to the extent that expectable conditions may require.

How, then, is the word "ordinary" usable? It means the ordinary, usual business men, good in skill and prudence for the adequate conduct of the business, and able and skilled to do what such men are accustomed to do. Business is not and cannot be conducted only by those superlatively expert. There is a degree of competency and qualification that in practice is sufficient. Such persons largely comprise the successful class in every business, and would be recognized by a jury if described as good business men for the ordinary management of a business. Such business men would know that different degrees of care would be required to meet varying conditions, and they would be able to use it, and if one failed he would fall below the class to which he belongs and be culpably negligent. What good business men in their business are accustomed to do would be what he should do.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.