LYDIA M. HERSHEY, Respondent, v. THE NEW YORK, ONTARIO
AND WESTERN RAILWAY COMPANY, Appellant.

MALCOLM J. HERSHEY, Respondent, v. THE NEW YORK,
ONTARIO AND WESTERN RAILWAY COMPANY, Appellant.

Fourth Department, November 12, 1919.

**Common carrier — railroad — negligence — liability for injury to
passenger caused by one of several immigrants who, while being
transferred to coach where plaintiff was riding, dropped his bag
which fell upon her hand — evidence — liability of carrier for
injuries to passenger — recovery must follow allegations of
complaint.**

In separate actions brought by a husband and wife for damages resulting
from injuries to the wife while a passenger on one of defendant's trains,
it appeared that the defendant, pursuant to its practice of shifting all
passengers for the west into a day coach prior to reaching a certain point,
transferred forty-three immigrants holding first-class tickets from the
smoker to a day coach, which would seat seventy-two people, in which
the plaintiff with two other passengers was riding; that as the immigrants
entered the coach, the conductor standing inside the door, they hurried
into the car carrying their baggage and jostled against one of their number
as he was attempting to place his bag in the rack above the plaintiff's
seat, causing him to drop the bag which fell upon the plaintiff's hand
and injured it.  It is not claimed that the man who dropped the bag
did it willfully or that he was negligent.  There was no evidence of
misconduct or disorder on the part of the immigrants or that they acted
in an improper manner.

*Held*, that the evidence was insufficient to justify the submission of the
case to the jury and that the complaints should be dismissed.

While the conductor might have anticipated that the pleasure of the plaintiff
would be interfered with on account of the presence of the immigrants,
there is no evidence from which he could fairly and reasonably have
anticipated any danger to her.

The defendant's employees were bound to exercise reasonable care under
the circumstances to prevent accidents of the kind in question and to
take all reasonable means and measures to secure the safety and comfort
of the passengers.  It is only when they neglect to do so and a passenger
is injured from a cause which they might reasonably have anticipated,
that the defendant would be liable.

The defendant may not be held liable because the passengers were moved
from the smoker to the day coach while the train was in motion, as the
complaint does not contain any such allegation and no such suggestion
was made upon the trial or in the charge to the jury.

KRUSE, P. J., dissented, with memorandum.

APPEAL in both actions by the defendant, The New York, Ontario and Western Railway Company, from judgments of the Supreme Court in favor of the plaintiffs, Lydia M. Hershey in the first action, and Malcolm J. Hershey in the second action, entered in the office of the clerk of the county of Oneida on the 1st day of April, 1919, upon the verdict of a jury for $500 in the first action and for $350 in the second action, and also from orders entered in said clerk's office on the 19th day of March, 1919, denying defendant's motion in each action for a new trial made upon the minutes.

The separate actions were brought by a husband and wife for damages growing out of injuries to the wife while a passenger on one of defendant's trains. The actions were tried together by consent.

*William H. Sullivan,* for the appellant.

*William B. Frye,* for the respondents.

HUBBS, J.:

The plaintiff Lydia M. Hershey, on September 26, 1917, at about nine-thirty o'clock in the evening, took passage at Liberty, N. Y., on a train on defendant's road. She had a first-class ticket to Buffalo, N. Y. The train consisted of a baggage car, parlor car, smoker and day coach. They were attached to the locomotive in the order stated. The plaintiff was seated in the day coach. The only other passengers in the car with her were two young men. In the smoking car were forty-three immigrants who had boarded the train at Weehawken, N. J. They each had a first-class ticket and were on their way to points west of Chicago. The terminus of the train was Utica, N. Y., at which point it made a close connection with a New York Central train for Chicago. It was the practice of the defendant to place all passengers for Chicago in the day coach before reaching Utica, at which point the day coach was connected to the New York Central train and taken through to Chicago.

The train upon which plaintiff was a passenger reached Norwich, a station on defendant's road, about midnight. After the train left that station the defendant, in accordanace with

its practice, transferred the passengers going to Chicago into the day coach, in order to save delay at Utica.

As the forty-three immigrants entered the day coach the conductor stood inside the door. The immigrants hurried into the car carrying their baggage. Two men took the seat in front of the plaintiff, Mrs. Hershey. Another man came to the seat in which she was sitting, picked up his bag as if he intended to place it in the rack and, at that time, those back of him came along and shoved up against him and tried to pass him and he dropped his bag which fell upon the plaintiff's hand and injured it. The car in which plaintiff was riding would seat seventy-two people. There were only three people occupying the car when the immigrants entered.

The trial court submitted the question of the defendant's negligence to the jury and it found a verdict for the plaintiff. We are unable to find any evidence in the record to justify the submission of the case to the jury.

The immigrants had the same legal rights in the car that the plaintiff had. It is not claimed that the man who dropped the bag on the plaintiff's hand did it willfully, or that he was negligent. So far as his conduct is concerned, the dropping of the bag was an accident caused, probably, by one of his companions jostling against him as he passed. The same thing might have happened if the same people had boarded the car at Norwich, the last station passed before the accident. It could hardly be contended that it would have been negligence to have permitted the same forty-three people to enter the car at Norwich. It is not contended that the immigrants were fighting, or noisy, that they were intoxicated or acting in an improper manner. There is no evidence of misconduct or disorder on their part. The most that can be said is that they were uncouth and rude and that they were hurrying to get seats.

It has not yet been held that rudeness and bad manners would justify a common carrier in excluding persons with first-class tickets from a day coach occupied by other passengers. From the nature of the business ordinary day coaches are available to all who pay their fare and conduct themselves in a lawful manner. There will, of course, be more or less haste and rudeness, and the comfort and pleasure of some

passengers may be affected thereby. Such fact, however, will not make a common carrier of passengers liable in damages on the ground of negligence.

" Carriers of passengers are not insurers of their personal safety against all contingencies. They are responsible only for want of care or skill." . (*Thomson* v. *Manhattan R. Co.*, 75 Hun, 549.) They are not liable for some rude act of a passenger which they could not fairly anticipate. They are only liable when they are negligent. There is no evidence in this case that such an accident ever happened before, although it appears that the same practice of shifting all passengers for the west into the day coach had been followed for years.

The defendant's employees were bound to exercise reasonable care under the circumstances to prevent accidents of this nature. They were bound to take all reasonable means and measures to secure the safety and comfort of the passengers. It is only when they neglect to do so and a passenger is injured from a cause which they might reasonably have anticipated that the defendant would be liable. (*Thomson* v. *Manhattan R. Co.*, 75 Hun, 548; *Putnam* v. *Broadway & Seventh Avenue Railroad Co.*, 55 N. Y. 108; *Morris* v. *N. Y. C. & H. R. R. R. Co.*, 106 id. 678.)

It is urged by the respondent that the danger in this case arose from the number and character of the passengers which the defendant's employees permitted to enter the car with her, and it is contended that the conductor should have apprehended the danger. We do not find any basis in the evidence to sustain such contention.

" The conductor is only called upon to act upon improprieties or offenses witnessed by or made known to him, and the company can only be charged for the neglect of some duty arising from circumstances of which the conductor was cognizant, or of which in the discharge of his duties he ought to have been cognizant." (*Thomson* v. *Manhattan R. Co.*, *supra.*) While there is some evidence of facts from which the conductor might have anticipated that the pleasure of the plaintiff might be interfered with on account of the presence of the immigrants, and he so testified, there is no

evidence from which he could fairly and reasonably have anticipated any danger to her.

It has been suggested that the defendant might be held liable for plaintiff's injury because the passengers were moved from the smoker to the day coach while the train was in motion. A sufficient answer to such suggestion is the fact that the complaint does not contain any such allegation, and no such suggestion was made upon the trial or in the charge to the jury. (*McNeil* v. *Cobb,* 186 App. Div. 177.)

The judgments and orders should be reversed, with costs, and the complaints dismissed.

All concurred, except KRUSE, P. J., who dissented in a memorandum and voted for affirmance.

KRUSE, P. J. (dissenting):

A load of immigrants, forty or more, was transferred from ship to train at Weehawken, N. J., late in the day. They were put in the smoker; they were going west of Chicago. The smoker was to be cut off at Utica. Just after the train had left Norwich, and within an hour or so from Utica, and while the train was in motion, the immigrants were directed to leave the smoker and go into the day coach, in which the plaintiff, a woman, was a lone passenger. It was then midnight or later.

They rushed into the coach with their boxes and sacks, crowding each other, looking for seats. When the crowd first started into her coach she did not see the conductor or any brakeman; she became frightened and looked up and saw the conductor standing at the door of the coach through which the immigrants were passing. She says two men got into the seat ahead of her; another made some remark to them, which she did not understand. The two in front of her turned around and looked at her; the third man tried to get into her seat. He kind of leaned, as she says, picked up his bag as if he was going to put it in the rack, and the fellows back of him came along and shoved up against him, tried to pass him, and in so doing he fell. She was trying to get her bag, intending to leave the car; she reached down, had her hand on the seat, and he fell on top of her. She describes the man

who fell upon her as having terribly long hair, an old coat on his arm and his overalls and jacket drawn together with a big safety pin and that all had mustaches and long hair and were unable to speak English. She observed that they were boisterous in the smoker; she does not say they were intoxicated but after they had left the smoker it was littered with bread, and bananas, and beer and whisky bottles, and the odor was very offensive. She was probably more frightened than physically injured, but she was hurt some.

The conductor, in describing the accident, says, that: " In the jar of the train he kind of fell over towards this lady and dropped his bundle off his shoulder." And according to the testimony of some of the trainmen, the accident occurred while the train was rounding a curve.

Continuing her description of the accident, she says that after the man fell another man took him by the back and pulled him up; that all this time the conductor was standing in the doorway, but he did not come to her assistance until she called; she beckoned to him and asked him what he meant by allowing these beasts on top of her; he replied: " Don't get excited, I will get you out of here." He took her suitcase and she followed him into another car. After the train reached Utica he took her to a doctor to dress and care for the injured hand.

The conductor admitted upon cross-examination that it would be no place for a lady with that crowd coming into the coach.

I think the rule of duty owing by the defendant to the plaintiff is correctly stated by Mr. Justice HUBBS in the prevailing opinion, that a carrier is required to use all reasonable means for the safety and comfort of its passengers, and is responsible for only such results as could reasonably be anticipated from such failure. But, as it seems to me, the conductor should have anticipated and foreseen, in the exercise of reasonable care and prudence, that harm might come to this woman from the transfer of this crowd of immigrants, with their boxes and bundles, rushing for seats and crowding each other, while the train was in motion and going around a curve.

The fact of the train being in motion when the transfer

was being made may, I think, be considered in determining the question of defendant's negligence, though not specifically alleged in the complaint (there being a general allegation of negligence) without doing violence to the rule applied in *McNeil* v. *Cobb* (186 App. Div. 177).

I vote to affirm.

In each case, judgment and order reversed, with costs, and complaint dismissed, with costs.