CAROLINE SCHUBART, Plaintiff, *v.* HOTEL ASTOR, Inc., Defendant.

Supreme Court, Trial Term, Kings County, April 7, 1938.

*James B. M. McNally,* for the plaintiff.

*Harry A. Redmond,* for the defendant.

SMITH (PETER), J. The jury returned a verdict of $2,500 in favor of plaintiff. During the trial the court reserved decision on defendant's motion to dismiss made at the end of the plaintiff's case and at the end of the whole case and on defendant's motion to set aside the jury's verdict. These motions were made principally on the ground that as matter of law plaintiff failed to show any negligence on the part of defendant. As to its negligence or freedom from negligence, defendant offered no evidence; it rested on plaintiff's proof. This proof may be briefly summarized:

On Saturday evening, November 16, 1935, plaintiff, a woman sixty-three years of age, in the company of her son, daughter-in-law and two friends, went to the Hotel Astor (owned and operated by defendant) at Forty-fourth street and Broadway, Manhattan, for the purpose of attending a banquet tendered by the Danish Society. Plaintiff had almost completed her entrance through the revolving door and was just about to step into the hotel proper; the door was turning slowly. Suddenly " there was an awful rush " and " a couple of young fellows * * * without hats and coats " running from inside the hotel lobby or corridor and chasing each other " came rushing by." They both entered the same compartment of the revolving door; they virtually " jumped upon the door " and at the same moment they gave it " a big " or " extra hard " push. As a result of this sudden and strenuous push plaintiff was struck by a part of the door and sustained a fractured hip and other injuries.

On that day the rival teams of Army and Notre Dame had played in this city their football game of the season. The Army faction had selected and used the Hotel Astor as their headquarters. When plaintiff arrived at the hotel there were " lots of people," " a great many people " in the hotel lobby and corridor; it was crowded beyond normal. " There was a large crowd of people " and they were " laughing, joking, quite gay, hilarious " and " very noisy." The door was revolving steadily; it was " constantly in use." There were people going out at every section; there were no empty spaces in the door; and " the people were coming in and going out in great numbers."

Despite this condition at the hotel, defendant did not maintain a doorman or attendant at or near the door and it did nothing to control its operation or to supervise its use. There was an attendant stationed outside on the sidewalk near the curb, some distance from the door, but he paid no attention to the door and he was concerned only with the safety and well-being of the patrons as they alighted from or entered their automobiles.

Plaintiff claims that under the circumstances here defendant was remiss in its duty of reasonable care for her safety because it failed to have a doorman present or to take other means and precautions to control the operation of the revolving door and to supervise its use; and so the jury has found. Defendant, on the other hand, takes the position that it was not negligent because as matter of law in the exercise of its duty it was not required to have a doorman present or to take any other means to supervise the use of the revolving door, and that the complaint, therefore, should be dismissed.

There is no doubt that the owner of an ordinary building, under ordinary circumstances, is not required to have a doorman present or to take any particular action to supervise the use or to control the operation of a revolving door. Here, however, we have neither an ordinary building nor ordinary circumstances. On the contrary, they are both, in every sense, extraordinary. The Hotel Astor is a landmark in this city. It is so well known that the court may take judicial notice of the fact that it is one of the most popular hotels in the heart of the most congested part of the most congested metropolis in the world. To it flock people of every kind and of every age; to them it is open at all times. Neither can the court ignore the commonly known fact that on Saturday nights this congestion is invariably increased; and that on the day of a great sporting event, such as the Army-Notre Dame football game, the influx of people from the suburbs and other cities further aggravates this congestion.

Under these circumstances, and with the hotel as the headquarters of one of the football factions, the court cannot say as matter of law that on that particular Saturday night no duty devolved upon defendant to have a doorman present or to take some other means or precautions to control the operation of the revolving door and to supervise its use. The number of people who congregated in the lobby and corridor was extraordinary, and the majority of them exhibited, in the plain view of those in charge of the hotel, a gay, hilarious and carousing mood. Defendant could not help having notice of the unusual number of people present and of their mood. When an extraordinary number of people, who openly manifest such spirited predilections, which are neither normal nor peaceful for a hotel, take possession of its main lobby or corridor, defendant could readily anticipate that the revolving door would not only be subjected to excessive use but also that it would be likely to receive rough usage and unseemly abuse. Defendant, if it had exercised reasonable care and diligence for the safety of its patrons, could readily have foreseen that unless it took some definite precautions with respect to controlling the use of the revolving door some innocent patron, especially one who no longer has her agility or her youth and who did not come to share in the fun and the frolic, might be injured by the unexpected antics or the unrestrained cavorting of some youthful celebrant of this carousing holiday group.

" The obligation of those who collect numbers of people in one place, for gain and profit, to be vigilant in their efforts to protect such people, has long been recognized." (*Platt* v. *Erie County*

*Agricultural Soc.*, 164 App. Div. 99; *Tantillo* v. *Goldstein Bros. Amusement Co.*, 248 N. Y. 286, 290.) One entering a hotel " is entitled to expect that far greater preparations to secure his safety will be made than one entering a private building " (*Greene* v. *Sibley, Lindsay & Curr Co.*, 232 App. Div. 53); and the obligation of the hotel proprietor includes particularly the duty to provide safe arrangements for the entrance and departure of people. (*Camp* v. *Wood*, 76 N. Y. 92.)

When one assembles a crowd or a large number of people upon his property for purposes of financial gain to himself he assumes the responsibility of " using all reasonable care to protect the individuals from injury from causes reasonably to be anticipated." In the exercise of this duty it is incumbent upon him to furnish a sufficient number of guards or attendants and to take other necessary precautions to control the actions of the crowd; and whether the guards furnished or the precautions taken are sufficient is ordinarily a question for the jury to determine under all the circumstances. (*Reschke* v. *Syracuse, Lake Shore & N. R. R. Co.*, 155 App. Div. 48, affd., 211 N. Y. 602; *Platt* v. *Erie County Agricultural Soc.*, 164 App. Div. 99, 103.)

In the case at bar, by reason of the fact that it was a Saturday night and that it was the day of the Army-Notre Dame football game and the Army faction made its headquarters in the hotel, an unusual crowd was present in the hotel. With knowledge of the proclivities of such a crowd and with their open demonstrations " it was defendant's duty to be attentive to the persons congregating and their actions, and the jury should judge of the occasion, its demands, and the defendant's fidelity to its duty." (*Bacon* v. *Hudson & Manhattan R. R. Co.*, 154 App. Div. 742.)

Generally, whenever the one in possession or control of property, for his gain or profit, invites or permits the public without discrimination to disport themselves upon it, the duty of exercising care requires him " to provide an adequate degree of general supervision." (*Curcio* v. *City of New York*, 275 N. Y. 20.) And if he maintains upon his property any special structure or device which may cause injury unless properly used, it is for the jury to determine whether under all the circumstances in the exercise of reasonable care he " should have furnished an attendant to supervise the use " of that structure or device. (*Schweit* v. *Harum Scarum Amusement Corp.*, 247 App. Div. 755, and cases there cited.) Here, with defendant's knowledge, an unusually large crowd disported themselves in the hotel lobby or corridor while two of them sought to amuse themselves with the device of the

revolving door. From the proof the jury would be justified in concluding that defendant not only failed " to provide an adequate degree of general supervision," but under all the circumstances defendant in the exercise of reasonable care should have, but failed, either " to furnish an attendant to supervise the use " of the revolving door or to take other means or precautions to control its operation.

Of course, this case is not to be compared with one where under ordinary circumstances the patron of a business establishment or railroad is injured as a result of the rude conduct of another patron in suddenly swinging a door (*Pardington* v. *Abraham*, 93 App. Div. 359; affd., 183 N. Y. 553; *Mangel* v. *Bronx Borough Bank*, 241 App. Div. 160; *Kiernan* v. *Manhattan R. Co.*, 28 Misc. 516), or where under ordinary circumstances a railroad passenger inside the car is injured by the unruly conduct of another passenger. (*Hershey* v. *New York, O. & W. R. Co.*, 189 App. Div. 270; affd., 232 N. Y. 577.) In those cases the accident is due to the carelessness or rudeness of a third person of which the defendant had no warning and against which it was impossible for defendant to protect the plaintiff. But, obviously, that is not true in the case at bar.

Here we have an unusual situation: An extraordinary number of people in a carousing mood, all in full view of defendant. In the exercise of the vigilance and care which defendant owed to plaintiff it was plainly a question for the jury to say whether under these unusual circumstances defendant could and should have anticipated an accident such as happened and whether it should have taken some precautions, either by stationing a doorman, or in some other manner, to avert the accident. Thus in the *Kiernan* case (28 Misc. 516), where a passenger in a railroad station was injured by a door when another passenger rudely dashed against it the court clearly pointed out that defendant could not be held liable because (p. 519): " There is no proof that the defendant had notice that the stranger would demean himself in a manner dangerous to his fellow passengers. There is no evidence that he was intoxicated, or boisterous, or violent, or in a condition requiring either his exclusion from the station or a watchfulness of his movements." The proof which was lacking there is present here.

In *Castro* v. *New York Rapid Transit Corp.* (253 App. Div. 832), a case decided by the Appellate Division of this department on January 21, 1938, plaintiff, while attempting to board a train at the Times Square Station, was injured when she was violently pushed into the train by the crowd on the platform. The jury rendered a verdict for the plaintiff. On appeal defendant contended

no negligence was proved against it because plaintiff was injured through the acts of third persons over whom it had no control. The Appellate Division affirmed the judgment holding, in effect, that it was for the jury to say whether under all the circumstances the accident was attributable to defendant's failure to exercise reasonable care in properly controlling the crowd.

In *Williams* v. *New York Rapid Transit Corp.* (272 N. Y. 366), plaintiff was shoved off a railroad platform by an unknown passenger. It was held that defendant was not liable because " this is not the case of an excessive crowding of a platform. * * * Nor is it a case of failure to repress a boisterous or unruly aggregation of passengers. Conditions were in all respects normal. Defendant could not fairly and reasonably anticipate the awkwardness of the passenger who caused plaintiff's injury." But here, on the contrary, we did have an unusual crowd; there was in fact a failure to repress a boisterous and unruly aggregation of patrons; conditions were in all respects abnormal; and defendant could fairly and reasonably anticipate the antics and the unrestrained behavior of its gay patrons which caused plaintiff's injury.

It may be argued that while the crowd was large and was boisterous and gay, defendant could not foresee that two of them would suddenly leave the others and would run through the corridor and jump into the revolving door and hurt plaintiff. But " it was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." (*Zurich G. A. & L. Ins. Co.* v. *Childs Co.*, 253 N. Y. 324, 328, 329, and cases there cited). Under the circumstances here the possibility of an accident was clear. In the words of Chief Judge CRANE, " negligence is guaged by the ability to anticipate " (*McGlone* v. *Angus, Inc.*, 248 N. Y. 197); and in the words of Chief Judge CARDOZO " the risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." (*Palsgraf* v. *Long Island R. Co.*, 248 N. Y. 339, 344.) Here defendant could have anticipated the rough usage to which the door would be subjected and the resulting injury to plaintiff. The risk of injury to plaintiff was within defendant's range of apprehension if it had exercised reasonable care; or at least so a jury may say.

In the Restatement of the Law of Torts the same rule is adopted with respect to the liability of one who holds out his property for the use of the public (§ 348, pp. 953–956). There it is expressly pointed out that in the exercise of reasonable care, the

owner of a public place has a " duty to police the premises " and to furnish a sufficient number of servants to afford reasonable protection " if the place is one or the character of the business is such that the utility or other possessor should expect careless or criminal third persons to be thereon either generally or at some particular time " (p. 955). As an illustration of the rule showing when liability will be imposed there is cited the case of a football team returning home and the failure of the railroad company to provide sufficient guards at the station to control the conduct of the boisterous crowd who, in fun or jest, cause harm to a passenger (p. 955).

Of course " the ability to anticipate " and " the range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury." (*Palsgraf* v. *Long Island R. Co.*, 248 N. Y. 339, 345.) In the instant case, however, under all the circumstances, there can be no question that varying inferences are possible with respect to defendant's " ability to anticipate " and its " range of reasonable apprehension," or, in other words, its failure to perform its duty of reasonable care. Therefore, it was primarily for the jury to determine the proper inference to be drawn; and the court, in its charge, squarely submitted that issue to the jury for their determination.

The jury having made their determination in plaintiff's favor on an issue upon which conflicting or varying inferences may properly be drawn, the court would not be justified in setting aside their verdict. (*Dandino* v. *New York Central R. R. Co.*, 273 N. Y. 111, 114.)

Accordingly, defendant's motions to dismiss the complaint and to set aside the jury's verdict are denied.