## THIRD DEPARTMENT, JUNE, 1939.

### (June 13, 1939.)

ELMER J. BOYCE, Appellant, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

Order setting aside verdict, and judgment of nonsuit, reversed, on the law and facts with costs, and verdict reinstated.

Hill, P. J., Crapser and Bliss, JJ., concur; Heffernan, J., dissents, with an opinion.

HEFFERNAN, J. (dissenting). Plaintiff has appealed from an order setting aside a verdict of a jury in his favor for $2,500 and dismissing the complaint and from the judgment entered thereon.

The action was brought to recover for personal injuries.

On June 1, 1937, plaintiff was a passenger on one of defendant's trains from Schenectady to Detroit. He boarded the train at nine-twenty-six P. M. and took a seat in the day coach. That coach was divided into two parts, the front part being a " smoker." He remained in the day coach until about eleven o'clock and then went to the smoker and occupied a seat with a soldier. He testified that there were seven or eight soldiers in uniform. He remained in the smoker for

about three-quarters of an hour, during which time, according to his testimony, the soldiers were drinking and talking in a loud manner and using vile language. Plaintiff testified that after he had been in the smoker for three-quarters of an hour one of the soldiers approached him and made an offensive remark and invited him to fight. Plaintiff immediately went into the day coach for the purpose of locating the conductor and brakeman but did not succeed in locating either. He remained in the day coach and slept until one-twenty-five in the morning. He then returned to the smoker and again occupied the same seat with the same soldier when suddenly and without any warning another soldier addressed a vile remark to him, grabbed him by the collar, pulled him out of the seat, struck him in the face, knocked him down and three other soldiers jumped on his stomach and chest. Plaintiff also testified that six or seven of the soldiers were drunk and that they had from six to eight bottles of whisky and were passing the bottles around and forcing civilians to take a drink. That is plaintiff's version as to what occurred, and in view of the finding of the jury we must assume that it is correct.

Ordinarily the mere fact that a carrier admits an intoxicated passenger to one of its cars with knowledge that he is intoxicated, or fails to eject him after acquiring such knowledge, is insufficient to render the carrier liable for an assault by him on another passenger. A state of intoxication in a passenger does not necessarily impel or authorize the assumption that he will offer violence or insult to other passengers. It is rather the degree of intoxication, its effect upon the individual, and the fact that by reason of the intoxication he may be annoying or dangerous to other passengers that give the right and impose the duty of expulsion from the train. In the event there is nothing in the conduct or known disposition of the passenger, other than mere intoxication, to warn the trainmen that he is likely to become insulting or violent towards another passenger, then the carrier is not liable for sudden acts of such character.

The rule is well settled in this State that a common carrier of passengers is not liable for an assault committed by one passenger upon another unless facts are brought home to it from which it could reasonably anticipate or naturally expect that an assault might be perpetrated, and the mere fact that a passenger is drunk does not justify the carrier in removing him. (*Putnam* v. *Broadway, etc., R. R. Co.*, 55 N. Y. 108; *Carpenter* v. *B. & A. R. R. Co.*, 97 id. 494; *Tyson* v. *Bauland Co.*, 186 id. 397; *Thomson* v. *Manhattan R. Co.*, 75 Hun, 548; *Hershey* v. *N. Y., O. & W. R. R. Co.*, 189 App. Div. 270; affd., 232 N. Y. 577; *Milliman* v. *N. Y. C. & H. R. R. R. Co.*, 66 id. 642; *Fardette* v. *N. Y., etc., R. R.*, 190 App. Div. 543; *Craig* v. *N. Y. C. R. R. Co.*, 272 N. Y. 610.)

In the *Putnam* case the deceased, accompanied by two ladies, was a passenger on one of defendant's cars. One Foster, who was intoxicated, boarded the car as a passenger, and while standing on the front platform made insulting signs at one of the ladies and annoyed her in various ways. He then entered the car and attempted to sit down next to the ladies. The deceased called the conductor's attention to the disorderly manner in which Foster was conducting himself and the conductor ordered him to sit down and be quiet. Foster, nevertheless, continued to make insulting remarks to the lady passengers and " while seated near the deceased he directed abusive language to him, and made threats indicating an intent to do him some bodily harm before he left the car." These threats were

not heard by the conductor and neither the deceased nor any one else called the conductor's attention to the threats or abusive language. A short while thereafter, as the deceased and the two ladies were leaving the car, Foster struck the deceased with a car hook, which he removed from the car, causing his death. The Court of Appeals held that there was no evidence to justify a submission of the case to the jury and that the complaint should have been dismissed. The court said: " The conductor was only called upon to act upon improprieties or offenses witnessed by him, or made known to him in some other way, and the defendants can only be charged for neglect of some duty arising from circumstances of which the conductor was cognizant, or of which he ought, in the discharge of his duties as conductor, to have been cognizant."

And again: " It does not follow and cannot be presumed that because a man is drunk, and is, in that condition, offensive to others, as well by his demeanor as in his appearance, that he is a dangerous man, and that his presence imperils the safety of others; that because he is drunk he may violently assault or murder others without provocation.

" If there was anything in the condition, conduct, appearance or manner of Foster from which the jury could reasonably infer that there was reason to expect or anticipate an attack upon the deceased, or any other passenger, either while upon the car, or in the act of leaving, the facts authorizing such inference should have been proved, and knowledge of them brought home to the conductor."

And again: " The assault by Foster upon the deceased could not have been foreseen, and it was not the reasonable or probable consequence of the omission of the conductor to eject him from the car, and upon principle as well as upon authority the injury was too remote to charge the defendant for the damages."

Here, upon the evidence most favorable to plaintiff, it can only be said that the soldiers were intoxicated; that they were noisy and perhaps disorderly; that they were using vile language and that a threat or invitation to fight had been made by one of them to the plaintiff; but it is not shown that such threat or invitation to fight had been brought to the attention of the conductor or any other member of the crew and there is no proof that the defendant had any knowledge of it. There was nothing in the conduct of the soldiers which indicated in any way that they were dangerous or that their presence imperilled the safety of plaintiff, or any one else in the car.

That the attack upon plaintiff was without any warning and wholly unexpected even by plaintiff himself is evidenced by the following excerpt from his testimony: " Q. He did that without any warning whatever? A. Yes, sir. Q. You had not seen any fighting in that car before? A. No, sir. Q. All that you heard in there was loud talk by the soldiers and you had seen drinking? A. Yes, sir. Q. And had heard vulgar language used in that car? A. Yes, sir. Q. You heard that the first time you went in the car? A. Yes, sir. Q. Were you scared or frightened when you went in the second time? A. No, sir. I thought it was all blowed over. Q. You thought it was all blowed over — you did not anticipate anybody was going to strike you? A. Absolutely not. Q. You sat down and just as you sat down this soldier came over and asked you to go out and fight? A. That is correct. Q. And what else did he say to you? A. Called me some vile names. Q. Then he struck you? A. Yes, sir. Q. Without any other warning? A. Without any other warning."

Even if we assume that defendant is chargeable with notice that these soldiers were drinking and using vile language, nevertheless there is nothing in such conduct by which defendant could reasonably anticipate the sudden and deliberate assault which was committed upon the plaintiff. All that defendant was required to do was to exercise reasonable care under the circumstances. It is not answerable for some act of a passenger which it could not fairly anticipate. To hold defendant liable under the circumstances disclosed in this record would be to require it to guarantee the safety of a passenger under all circumstances. In my judgment the order and judgment dismissing the complaint were proper and should be affirmed.