MARGARET CALLAGHAN et al., Plaintiffs, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Trial Term, New York County, May 14, 1953.

*Joseph R. Apfel* for plaintiffs.

*Denis M. Hurley, Corporation Counsel* (*Edmund P. Keating* of counsel), for defendant.

PAXTON BLAIR, Special Referee. This is an action by a woman subway passenger for injuries sustained when, under pressure from a closely packed crowd, she was caused to fall between a car and the platform. Her husband sues for loss of consortium. Both plaintiffs proved damages up to the full amount of their respective notices of claim filed with the comptroller. The question for decision is whether negligence on the defendant's part was proved.

After an examination of a great many decisions, and a study of the records and briefs underlying them, I am compelled, in spite of my great sympathy for Mrs. Callaghan's misfortune, to conclude that negligence was not proved, and that the complaints must be dismissed.

The perils of subway travel are notorious. The increase of the size of rush-hour crowds over the years is also notorious. It would be beyond my province to inquire into why this is so. As long ago as 1917 the Appellate Term in the department referred to '' the bestial conditions of passenger traffic obtaining in the city of New York during the so-called ' rush hours ' * * *.'' (*Broder* v. *New York Cons. R. R. Co.*, 98 Misc. 256, 258.) These conditions, it may be judicially noticed, have worsened, not improved in the interval. The trend of judicial decision has been to stiffen the obligations of those seeking to establish negligence on the part of those who operate the subways. Doubtless the courts realize that since subways are not operated at a profit but at a heavy loss, the public welfare will not be advanced by rules of decision imposing higher and higher standards of care upon the transit system, leading to more and more judgments in negligence actions. A study of recent decisions permits no other inference.

This accident happened at 5:10 P.M. on Monday, December 4, 1950, on the northbound platform at 125th Street and Lexington Avenue. This is an island platform with expresses entering on the west side and locals on the east. The expresses continue more or less straight north beyond this point, whereas all the locals turn somewhat to the east, serving the east Bronx region and in some cases going as far as Pelham Bay Park. The consequence is an unusually heavy movement of passengers across the platform at this station, but there was testimony that more people changed from expresses to locals (and this is what Mrs. Callaghan was doing when injured) than change in the opposite manner. To this factor the transit system reacted intelligently, for it assigned eleven of the seventeen guards stationed on the platform to the local side and six to the express side, notwith-

standing the greater length of the express trains. There were no guard rails along the edge of the platform, but the factor is irrelevant when, as here, the injury is sustained directly opposite a car door. (*McKinney* v. *New York Cons. R. R. Co.,* 230 N. Y. 194, 198.)

I have read with care the case of *Lagattuta* v. *Murray* (259 App. Div. 988) on which the plaintiffs rely. The accident in that case occurred on the northbound express platform at Third Avenue and 42nd Street. Only two guards were on duty at the time. The Appellate Division, by three votes to two, sustained a plaintiff's judgment provided she consented to its reduction to a named figure. The dissenting Justices voted to dismiss the complaint. A crucial excerpt from the plaintiff's testimony in that case was the following (fols. 68–69): " As the doors opened, the people all started pushing, the people behind me and the side of me, were pushing until I was carried off my feet. I had no control of my feet, just carried right along to the front of the platform. Then my two feet went down between the space between the platform and the train. As I did so, the people in the back of me and the sides kept pushing me forward until I was pressed down into the platform of the train * * *."

Mrs. Callaghan's complaint merely assigns the " pushing and shoving of other passengers " as the cause of the accident; and on the witness stand she says that she could not move any part of her body, or her feet. She also said she was " carried by the crowd ". But after the *Lagattuta* case came *Wittes* v. *City of New York* (265 App. Div. 810) where the same court affirmed a judgment for the defendant, although the plaintiff, injured by being pushed into the space between the train and the platform in the morning rush hour on the southbound platform at 125th Street and Lexington Avenue, had testified (fols. 54–55): " It was a rush hour and there was many people there, so we walked down, I mean, from the local to the express, and there was so many people that I was pushed going there to the train, and when I came to the doorway there was many people in back of me, many people both sides, right side and left side. When I started to go in I couldn't go in and I couldn't move, and after when I felt my foot is down between the car and the platform." My conclusion is that her testimony does not deprive either the *McKinney* or the *Wittes* case of their pertinence.

There are, it is true, intimations in some of the cases that if the constricting effect of the crowd upon the plaintiff is " so great as to prevent her free action " (*Commerford* v. *Inter-*

*borough R. T. Co.*, 199 App. Div. 852) negligence may be inferred. And see *Sarkin* v. *Murray* (279 N. Y. 673). But the inference seems not to be compulsory, and I am the more indisposed to make it in view of the affirmative evidence offered by the defendant as to the number and distribution of the guards. Evidence of considerable impairment of the injured plaintiff's freedom of action did not save plaintiffs' judgments from reversal in *McKinney* v. *New York Cons. R. R. Co. (supra)*, in *Bacon* v. *Hudson & Manhattan R. R. Co.* (154 App. Div. 742) and in *Majorin* v. *Interborough R. T. Co.* (216 App. Div. 711). As further evidence of the trend of judicial decision in this field, see *Accetta* v. *City of New York* (48 N. Y. S. 2d 487) and *Vogeley* v. *City of New York* (48 N. Y. S. 2d 487).

The case is thus shown to be one of simple overcrowding, unattended by disorderliness or gang action. Cases like *Feldman* v. *Murray* (285 N. Y. 568) and *Kuykendall* v. *City of New York* (291 N. Y. 547) are distinguishable. Since I am unable to find any measure, within the limits of practicality, which the defendant might have taken to prevent this accident but did not take, it follows that the defendant is entitled to judgment dismissing the complaints, with costs.