OPINION OF THE COURT
Eileen A. Rakower, J.
Plaintiff commenced the instant action for damages from personal injuries sustained on April 8, 2000, when a child came into contact with her and caused her to fall at defendant’s bowling alley, located within the Port Authority bus terminal in Manhattan. Plaintiff’s main claim is that defendant failed to properly supervise all persons, and in particular, children on *554 its premises. Plaintiff also claims that defendant was negligent in that it failed to require parents and guardians of children to supervise them at the premises.[1] Defendant moves for summary judgment and to dismiss this action on the ground that defendant, as a matter of law, owed no duty to plaintiff to control the conduct of the child with whom she had contact. Defendant argues that it cannot be held liable for permitting children in the premises or for being unable to monitor the activities of each child in relation to other patrons of the facility.
Plaintiff Martha Wilson, a 73-year-old woman, testified during a deposition held on July 21, 2001 that she and her adult son Jimmy Diamond entered defendant’s bowling alley on April 8, 2000 sometime after 6:00 p.m. to “kill a little bit of time before the bus” (defendant’s exhibit F at 12). Plaintiff testified that she noticed a security guard when she entered the bowling alley (defendant’s exhibit F at 28). After entering, plaintiff and her son walked down toward the bowling area, past a bar area that is a part of defendant’s premises. They stood for approximately 5 to 10 minutes in front of a counter that had bowling balls and pictures of bowlers on it (defendant’s exhibit *555 F at 18). There was no staff at the counter during that time (defendant’s exhibit F at 31). No children were bowling, but “they were running around” (defendant’s exhibit F at 19). While standing there, plaintiff noticed two young children chasing each other near where she and her son stood (defendant’s exhibit F at 22). One was a girl about four or five years old. No adult told the children to stop running (defendant’s exhibit F at 27, 30). When plaintiff and her son were exiting the bowling alley, plaintiff states that she was struck by something moving quickly that caused her to fall forward (defendant’s exhibit F at 42-43). Plaintiff then noticed that there was a child pinned beneath her (defendant’s exhibit F at 44).
Defendant’s security guard Charles Finch, who was on duty during plaintiff’s accident, testified at his deposition held on December 13, 2001 (defendant’s exhibit G) that there were many birthday parties at defendant’s bowling alley. He explained that one of his duties was to attempt to make sure that children did not run out of the facility without parents (defendant’s exhibit G at 14). “I have to make sure that nothing happens nothing go wrong no fights anything like that anything that nature [sic]” (defendant’s exhibit G at 12). Mr. Finch testified that he recalled seeing plaintiff and her son enter the facility, although he claimed that they entered the facility at 12:30 p.m. (defendant’s exhibit G at 11). He also testified that they were there for nearly 30 minutes' and that they had ordered food (defendant’s exhibit G at 41-42). Mr. Finch said that he saw a young girl, about one or two years old, chasing one of the regular adult bowlers (defendant’s exhibit G at 28). Mr. Finch stopped them both from running and prevented the little girl from running into the bar (defendant’s exhibit G at 30). He testified that plaintiff walked haltingly (defendant’s exhibit G at 38). He also claimed that he had turned away for a few seconds to look at the arcade area. When he turned back, he saw plaintiff go over (defendant’s exhibit G at 47).
By an affidavit submitted in opposition to the instant motion, plaintiff’s son Jimmy Diamond alleges that he observed defendant’s security guard Charles Finch upon entering defendant’s bowling alley, as well as two young girls about the age of four or five running wildly and out of control (plaintiff’s exhibit 1 H 2). He states that he observed the girls knocking into things and crashing into people, but at no time did he see anyone try to control them. He states further that Mr. Finch observed this behavior and did nothing (plaintiff’s exhibit 1 *556 2). He also states that one of the young girls crashed into his mother and she was injured as a result (plaintiffs exhibit 1 1} 3). He alleges that they did not enter the restaurant located in defendant’s bowling alley or eat anything as Mr. Finch testified (plaintiffs exhibit 1 4).
Finally, defendant submits an unsigned accident report in support of the instant motion (defendant’s exhibit H). The report alleges that plaintiff tripped over “Ms. Harper and fell face down to the ground.” Defendant’s security guard Charles Finch is alleged in the report to have seen the incident. Mr. Diamond states in his affidavit that neither he nor his mother filled out the report and that such a report had not been shown to them (plaintiffs exhibit 1 4).
“To grant summary judgment it must clearly appear that no material and triable issue of fact is presented (Di Menna & Sons v. City of New York, 301 N. Y. 118). This drastic remedy should not be granted where there is any doubt as to the existence of such issues (Braun v. Carey, 280 App. Div. 1019), or where the appeal is ‘arguable’ (Barrett v. Jacobs, 255 N. Y. 520, 522); ‘issue-finding, rather than issue-determination, is the key to the procedure’ (Esteve v. Abad, 271 App. Div. 725, 727). (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404.)” (Ramsammy v City of New York, 216 AD2d 234, 236-237 [1st Dept 1995].)
Defendant argues that it owed no duty of care to plaintiff under the circumstances presented and summary judgment at this juncture is appropriate. Defendant states that its facility, like a restaurant or arcade, is an establishment that has children as patrons, and that children will act and play as children do. Defendant asserts that the parent or legal guardian of the child involved in this accident would have no liability to the plaintiff for the improper or negligent supervision of the child in the bowling alley, and it is inequitable therefore to impose such liability on the premises owner. Defendant posits further that it should not be held liable for permitting children in the premises or for being unable to monitor their activities in relation to other patrons of the facility. Defendant cautions the court that by finding defendant liable for acts committed by children at its facility, a new and dubious area of negligence law would emerge. The court disagrees.
“The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is of course a question of law for the courts * * * In the ordinary circumstance, common law in the State of New York does not impose *557 a duty to control the conduct of third persons to prevent them from causing injury to others; liability for the negligent acts of third persons generally arises when the defendant has authority to control the actions of such third persons * * * This is so * * * even where ‘as a practical matter’ defendant could have exercised such control” (Purdy v Public Adm’r of County of Westchester, 72 NY2d 1, 8 [1988] [citations omitted]). An exception may occur in a case where a special relationship exists between the defendant and the third party so as to give rise to a duty to control; or alternatively, where a special relationship exists between the defendant and the plaintiff which gives the latter the right to protection from the conduct of others. (See, Purdy, supra at 8; Pulka v Edelman, 40 NY2d 781, 783-784 [1976].)
It has been long held that an owner of a theatre or other public assembly has a duty to guard against risks which should be anticipated or averted by the exercise of ordinary care. (Tantillo v Goldstein Bros. Amusement Co., 248 NY 286, 290 [1928].) “Patrons are entitled to protection against acts which by their nature might cause a menace to safety. One who collects a large number of people for gain or profit must be vigilant to protect them.” (Id.) “[W]henever the one in possession or control of property, for his gain or profit, invites or permits the public without discrimination to disport themselves upon it, the duty of exercising care requires him ‘to provide an adequate degree of general supervision.’ (Curcio v. City of New York, 275 N. Y. 20.)” (Schubart v Hotel Astor, 168 Misc 431, 435 [Sup Ct, Kings County 1938], affd 255 App Div 1012, affd 281 NY 597 [1939].)
The duty of care to protect patrons from injuries sustained as a result of the presence of glass in a pool, presumably deposited by unsupervised children, was found by the court in the case of Seligson v Victory Pool (187 Misc 1067 [App Term, 1st Dept 1946], affd 272 App Div 766 [1st Dept 1947]). In Seligson, plaintiff was injured in defendant’s swimming pool when she cut her foot on broken glass. Testimony adduced at trial revealed that there was a restaurant maintained by defendant where bottled beverages were sold. Plaintiff and her witnesses testified that children were permitted to play with glass bottles alongside the pool, although no one testified to actually seeing a bottle thrown into the water. Defendant’s lifeguards were stationed at the opposite end of the pool from where plaintiff was injured. (Id.) The court, in relying on Tantillo (supra), affirmed the jury’s finding that defendant was *558 negligent for failing to properly and adequately supervise the pool in order to fully protect its patrons. (Seligson, supra at 1068.)
Defendant’s concerns that this court would find a new liability for parents or those in loco parentis is misplaced. The court acknowledges the general rule that a parent is not liable for the torts of the child (see, Davies v Incorporated Vil. of E. Rockaway, 272 AD2d 503 [2d Dept 2000]; see General Obligations Law § 3-112). Here, however, the issue is whether the bowling center permitted a dangerous condition to persist on the premises by failing to control an alleged whirlwind of children “running wildly out of control.” The focus is not on child supervision but on preventing a danger with an adequate degree of supervision over the premises.
Children are a presence in even more venues than in 1946 when Seligson was decided. They are full fledged consumers, catered to and specifically invited into places. Bowling alleys, which most often have a bar on the premises, and were once patronized primarily by adults and young adults, now host birthday parties for children and boast bumpers so children won’t suffer the discouragement of a gutter ball. Even local beauty salons now host birthday parties, and offer manicures and hairstyling for young children.
This court does not suggest that children invited into adult arenas are a dangerous condition in and of themselves. Rather, as defendant itself points out, children will act and play as children do. Consequently, defendant has a duty to anticipate any concomitant increase in the risk and the foreseeability of injury, and maintain its premises accordingly.
Conduct, like a physical defect at the premises, can create a dangerous condition, which a premises owner has the duty to control or abate. (See, Burgos v Aqueduct Realty Corp., 92 NY2d 544 [1998].) The issue is not one of whether defendant here had a duty to supervise someone else’s children. Rather, it is whether defendant’s duty to maintain safe premises required it to control conduct at its premises. It is a question of fact whether the conduct complained of here constituted a dangerous condition at defendant’s entertainment facility such that defendant was required to act.
Defendant’s security guard, Mr. Finch, himself testified that children are often at the facility and that he has been instructed to supervise them. Mr. Diamond and Mr. Finch both noted children running around on the premises at some time prior to the accident. Mr. Finch commented, “[w]ell, actually I just had to move and go towards the bar and tell them to stop *559 running. If somebody was to get hurt you or she get hurt, then there’s a problem. So we had to let them both know they couldn’t run in the bowling center” (defendant’s exhibit G at 32).
It is for a finder of fact to decide whether the presence of running children constituted a dangerous condition, whether defendant had notice of the dangerous condition and failed to correct it, whether injury was foreseeable, and whether this condition was the proximate cause of plaintiffs injuries. Accordingly, defendant’s motion is denied.

. Plaintiff alleges in her complaint, “That the negligence of the defendant included, but is not limited to the following: in failing to maintain the premises; in failing to keep the premises in a safe and hazard-free condition; in failing to warn plaintiff as to the aforesaid dangerous and hazardous condition in and around said premises; in failing to prevent injury to the plaintiff as a result of the general negligence of the defendant, by its agents, servants and/or employees; in violating various rules, regulations, ordinances and statutes governing the premises; in failing to warn the plaintiff of impending danger therein; and in causing, creating and/or allowing to remain * ** * dangerous and hazardous persons, and in particular, infants on the premises of the defendant; in failing to properly control all persons, and in particular, infants on the premises of the defendant; in failing to require parents and guardians of infants who are patrons on the premises to control and supervise their infants; in failing to enforce the requirement that parents and guardians of infants who are patrons on the premises to control and supervise their infants; in failing to control and supervise infants who are on the premises; in failing to prevent injury to this plaintiff; in failing to prevent plaintiff from being seriously injured as a result from the negligence of defendant; in generally acting negligently and carelessly under the circumstances then and there existing; in negligently, carelessly and dangerously maintaining the premises of the defendant; in negligently, carelessly and dangerously maintaining the premises used by this plaintiff who was present on the premises thereat; in generally failing to maintain sufficient agents, servants and/or employees, security guards and supervisory personnel on the premises of the defendant; in failing to properly train its agents, servants, and/or employees; in failing to institute promulgate, and/or follow, appropriate safety procedures for the safety of business invitees on the premises” (emphasis added).